[Civ. No. 43287. First Dist., Div. Two. Mar. 31, 1980.]

SHIRLEY DIANE HART, Plaintiff and Appellant, v.
HERBERT T. BROWNE, Defendant and Respondent.

948

COUNSEL

Edward Freidberg and Rex-Ann S. Gualco for Plaintiff and Appellant.

Rankin, Oneal, Center, Luckhardt, Marlais, Lund & Hinshaw, Louis Oneal and Richard G. Logan for Defendant and Respondent.

OPINION

MILLER, J.—This is an action for damages instituted by appellant Shirley Diane Hart against respondent Herbert T. Browne, M.D., arising out of an opinion given by respondent to appellant's then attorneys that another doctor, John G. Nork, who had previously treated Hart, was not guilty of medical malpractice in connection with said treatment. Appellant proceeded against respondent on two separate theories: First, that he was negligent in rendering said opinion; second, that he acted fraudulently in giving his opinion. The case went to trial before a jury. At the close of appellant's case, a nonsuit was granted as to the cause of action based on fraud. The case was submitted to the jury on the negligence theory, with a request for special findings. The jury found 1) Dr. Nork was negligent, 2) respondent was negligent, but 3) respondent's negligence was not a proximate cause of the loss of appellant's cause of action against Dr. Nork. Ms. Hart appeals from both the judgment of nonsuit on the cause of action for fraud and from the judgment entered on the jury verdict on the negligence cause of action.[1]

---

[1]In the notice of appeal, it is stated that the appeal is "from that certain judgment made and entered by the above-entitled Court on the 20th day of April, 1977...." Judgment on the jury verdict was entered on April 28, 1977. In addition, the notice of appeal makes no reference to the court's order granting respondent's motion for nonsuit. However, "[u]nder the rule of liberal construction, ambiguities will be resolved in favor of validity of the notice." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 333 and cases cited therein.) Our Supreme Court has already held that dismissal of an appeal is not compelled by an erroneously stated date of judgment in the notice of appeal. (See *Title Guarantee & Trust Co.* v. *Lester* (1932) 216 Cal. 372 [14 P.2d 297].) Similarly, omission of notice that appellant is also appealing from the court's order granting nonsuit is not fatal. Since California's "one judgment rule" mandates that there is ordinarily only one final judgment in an action (*Lemaire* v. *All City Employees Assn.* (1973) 35 Cal.App.3d 106, 109 [110 Cal.Rptr. 507]), this court construes the judgment rendered in the instant action as encompassing all related causes of action.

Evidence produced at trial revealed that appellant was involved in an automobile accident in 1962. At that time she was 17 years old. As a result of the injuries suffered in the accident, she was partially paralyzed in her lower extremities. After undergoing two surgeries performed on her back, Dr. Nork, an orthopedic surgeon practicing in Sacramento, commenced treating her. By March 23, 1968, Nork had performed five operations on her right lower extremity and four operations on her left lower extremity, necessitating hospitalization on eleven occasions. Shortly thereafter appellant came under the care of Dr. Howard F. Shortley, also an orthopedic specialist practicing in Sacramento. Upon the recommendation of Dr. Shortley, appellant's right lower extremity was amputated in February of 1969.

When it was discovered that her right leg would have to be amputated, appellant was encouraged by friends to seek advice from an attorney concerning a possible medical malpractice action against Dr. Nork. Appellant consulted Evans, Jackson and Kennedy, a Sacramento law firm, but told various partners and associates of the firm that she did not want to file a lawsuit against Dr. Nork until they knew that there had been some negligence on his part.

The law firm obtained a detailed narrative from appellant as a result of interviews with her. A 13-page narrative of her treatment was prepared, photographs were taken, and hospital records of her treatment after her accident, including all of Dr. Nork's hospitalizations and treatment, were obtained.

Attorney Evans attempted to obtain a medical opinion in Sacramento as to whether Dr. Nork's care and treatment of appellant was negligent. He first discussed the matter with Dr. George Sims, who refused to have anything to do with the case. However, Dr. Sims suggested that Evans contact respondent, an orthopedist who had taught at Stanford University. Evans next contacted an orthopedist at the University of California Medical Center, who was unable to take the case. However, that orthopedist also gave respondent a high recommendation. Evans then contacted a third orthopedist in Sacramento who, like the others, refused to get involved.

Evans finally contacted respondent and he agreed to act as a consultant. A conference was arranged in respondent's Palo Alto office. Evans, his partner Jackson, and associate attorney Fisk from the firm

attended the meeting with respondent. The attorneys brought with them the 13-page summary and the Mercy Hospital records which were left with respondent. During the meeting the attorneys discussed several things that apparently concerned them, particularly Dr. Nork's alleged failure to diagnose a bone infection. Additionally, Attorney Jackson told respondent of a rumor he had heard that Dr. Nork was a user of drugs and that he should consider this when reviewing the records.

During this conference, respondent indicated that he would need the Sutter Hospital chart since appellant's right leg was amputated there. These records were subsequently sent to respondent.

After respondent completed his review of the records, a second meeting was arranged at his office. Respondent testified that he told the attorneys that the case was a complicated one, that while orthopedists differ as to treatment he would not have treated appellant as Dr. Nork had done. However, he advised them that he felt that Dr. Nork had conducted himself within the standard of care in dealing with a most difficult problem and that he did not feel that he could honestly testify that Dr. Nork had committed malpractice. Evans testified that during the conference the group discussed each of the surgeries that Dr. Nork had performed and that in each instance respondent told the attorneys that Dr. Nork had given appellant excellent or good care; there was no evidence of any medical negligence. The sum and substance of respondent's opinions was that all the surgeries were necessary, properly performed, and the medical care given was with the exercise of good medical judgment. He explained that appellant lost her right leg, not because of the surgeries, but because of the initial injury to her back and the resulting physical deterioration. He told the attorneys that the loss of the leg was something that Dr. Nork attempted to prevent by his surgeries which were unsuccessful through no fault of his own.

The group also discussed two statements allegedly made by Dr. Nork to appellant. First, appellant told her attorneys that in August of 1966 Dr. Nork apologized to her for trying to perform a triple arthrodesis and told her it had never worked before, that he was aware of it and had made a serious mistake. Second, prior to releasing appellant from the hospital in April, 1968, Dr. Nork said to appellant: "I'm sorry for all of this, and I feel it is my fault." Evans testified that respondent's overall opinion indicated to the attorneys that Dr. Nork's statements meant something other than medical fault. However, Evans conceded

that he didn't expect respondent to interpret these statements and that the only way to find out what Dr. Nork meant was to interrogate him.

The attorneys had a discussion immediately after the conference and concluded, as a result of respondent's opinions, they would have to advise appellant that they did not feel she had a case against Dr. Nork. They discussed respondent's reliability and felt that they could not get a better opinion elsewhere. None of the three attorneys had knowledge of medical matters or experience in this type of medical malpractice case. They felt that without a medical expert's opinion there was evidence of malpractice, they could not advise their client to sue. Based on respondent's reputation and expertise, they would have to rely on his opinion and that it would be unproductive to consult another expert.

The attorneys informed appellant of their opinion. They explained how they located respondent, described his background and qualifications, and told her of their own belief in his reliability. They informed her that they felt bound by his opinion that she had received excellent care from Dr. Nork. Appellant told the attorneys that she did not want to pursue the case. Her decision not to sue Dr. Nork was "because Dr. Browne said that he didn't do anything wrong and I had good care." Had she been informed that Dr. Nork had done something wrong and his treatment of her contributed to her amputation she would have sued him. As a result of this meeting with appellant no further action was taken on the case and the file was closed. By February 1970, the statute of limitations had run on appellant's cause of action against Dr. Nork.

Sometime in the summer of 1970, Attorney Jackson became aware that appellant's present attorney had a number of cases pending against Dr. Nork. Jackson telephoned appellant's present attorney and asked him to take a look at her file. Thereafter, appellant, through her present attorney, instituted an action against Dr. Nork and the hospital. The demurrer on the statute of limitations was sustained without leave to amend.

In April 1971, appellant sued respondent. Appellant's complaint incorporated by reference the complaint that she filed in October 1970 against Dr. Nork and the Mercy General Hospital.[2]

---

[2]Respondent demurred to the complaint. The trial court sustained the demurrer without leave to amend stating that the allegations of appellant's complaint "clearly manifest an absence of any legal duty or standard of care owed by defendant to the

In the trial below, appellant produced three expert witnesses to testify that Dr. Nork's care and treatment of appellant was grossly negligent and was the cause of the amputation of her right lower extremity.

Dr. Collins, an orthopedic surgeon and attorney, testified that when he was supplied with the same hospital records that respondent had, he had great difficulty following them and they did not appear to make sense medically. He stated that not only was the treatment below the standard of care in a number of instances but the treatment that was given was beyond his belief. He felt at that time that there must be some derangement in Dr. Nork to have done what he did to appellant. Having reviewed more than 200 potential and actual malpractice cases, he stated that this was the worst medical malpractice case that he had seen.

Dr. Joseph Bernstein, an assistant clinical professor of orthopedic surgery at the University of California Medical Center, testified that his review of the same records was "sort of an Alice in Wonderland experience." There were things in the records that just did not make sense.

Dr. George Sims, an orthopedic surgeon who had studied under respondent at Stanford Medical Center, testified that in his opinion Dr. Nork rendered substandard medical care to appellant. He stated that he was quite familiar with respondent's competence and ability and could not understand how he failed to find malpractice by Dr. Nork in his review of the hospital records of appellant's care.

Dr. Nork testified and admitted that his surgical privileges were revoked on June 4, 1970, that he commenced taking drugs in 1963 and his use of drugs in the years 1965 through 1968 may have affected his judgment in reaching decisions about when to operate.

Appellant introduced into evidence admissions by Dr. Nork where he acknowledged that it was below the standard of care to subject her to

named plaintiff herein;..." Appellant appealed the judgment and this court, sitting in Division One, reversed the judgment of the trial court. The court held that the issue of the statute of limitations, as raised by respcndent, was one of fact, not of law. Additionally, the court held that respondent owed a legal duty to appellant. If the advice respondent gave was negligent or fraudulent it would give rise to a cause of action in either negligence or fraud.

the April 6, 1965, surgery and that he had performed the surgery in a manner below the standard of care. Similar admissions were made for six other surgeries. Nork testified that all of the operations were basically doomed to failure from the start.

Throughout the trial—in opening statement, through cross-examination, and in closing argument—respondent's defense attorney attempted to show that appellant's former attorneys were inexperienced in handling malpractice cases, were negligent in properly investigating appellant's case against Dr. Nork both before and after their consultation with respondent, and were the cause of appellant's losing her cause of action against Dr. Nork. Appellant's counsel argued to the court that the defense strategy of trying appellant's former attorneys was improper, that evidence concerning their alleged negligence was irrelevant and that the concept of superseding cause was inapplicable as a matter of law. The court refused to sustain objections to the line of inquiry that attempted to establish the standard of care of attorneys and instructed the jury on the issue of superseding cause.

One day after the jury retired to deliberate, the court received a note which stated: "Please reread instructions on proximate cause, superseding cause, and judge's explanation of what 'tolled' means with respect to a legal cause of action?"

In response to the jury's request the court informed them: "Now, I must advise you that although there was some discussion in questioning about 'tolling' in this case, the issues presented to you relate essentially to the negligence of Dr. Browne and whether or not he is liable. Therefore, you are not to discuss or speculate about any possible action which the plaintiff may or may not have against her attorneys. That is totally immaterial to any issue in this case. The instructions which I will read about a superseding cause relates only as it may affect Dr. Browne. And as you will note, before there is a superseding cause you have to determine the negligence of Dr. Browne. If Dr. Browne is not negligent you never get to superseding cause. If he is negligent according to your findings then you can consider the issue of superseding cause."

■ On appeal, appellant first contends that the trial court erroneously nonsuited appellant on her cause of action for fraud, since there was more than sufficient evidence to raise a triable issue of fact.

In ruling on a nonsuit a court must disregard conflicting evidence, give plaintiff's evidence all the value to which it is legally entitled, and indulge plaintiff in every legitimate inference that may be drawn from her evidence. (*Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal.App.3d 633, 637 [105 Cal.Rptr. 890].) It must then be determined whether the evidence, if viewed favorably to plaintiff's cause, was sufficient to support a jury verdict in her favor. (*Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 395 [143 Cal.Rptr. 13, 572 P.2d 1155].)

"The general elements of a cause of action for fraudulent misrepresentation are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." (*Zinn* v. *Ex-Cell-O Corp.* (1957) 148 Cal.App.2d 56, 68 [306 P.2d 1017]; see also, *Vogelsang* v. *Wolpert* (1964) 227 Cal.App.2d 102, 109 [38 Cal.Rptr. 440].) Accordingly, we must consider whether appellant presented sufficient evidence on each of these points to support a jury verdict if the evidence was believed.

Appellant presented three experts who, after reviewing the same materials that respondent had used, testified that Dr. Nork's treatment of appellant was far below the normal standard of care. Additionally, Dr. Nork admitted that this was the case. Clearly, this was sufficient evidence to show that respondent's statement that Dr. Nork's treatment was excellent or at least within the normal standard of care constituted a misrepresentation.

The second and third elements, consisting of knowledge of the falsity as well as intent to induce reliance, related to respondent's state of mind. These elements may be proved by inference. "Fraud, of course, may be proved by inference and by the circumstances surrounding the transaction and the relationship and interests of the parties." (*Vogelsang* v. *Wolpert, supra*, at p. 111.)

Regarding the element of scienter, evidence of the falsity of a representation is sufficient to raise a triable issue of fact as to the elements of knowledge of the falsity. In *Maxson* v. *Llewelyn* (1898) 122 Cal. 195 [54 P. 732], the defendant argued there was insufficient evidence to show that at the time he made the representations he did not believe they were true. Our Supreme Court, in affirming a judgment against

the defendant, stated: "It would in most cases be extremely difficult, and *in many cases absolutely impossible*, to procure direct evidence of this nature. In all cases it is permissible to prove fraud by circumstances, and in most cases it is the only evidence available. In aid of the direct facts proved, legitimate inferences are permitted to be indulged to establish other facts not directly in evidence." (*Id.*, at p. 198.)

In the trial below, there was abundant testimony that gross malpractice had been committed by Dr. Nork. This subnormal treatment was evident from appellant's narrative and her hospital records, both of which were used by respondent in rendering his opinion to appellant's attorneys. Respondent enjoyed a reputation as a highly regarded orthopedic surgeon and teacher of orthopedic surgery at a prestigious medical center. Given the man's reputation and the nature of the information and materials on which he was basing his opinion, the jury could well have inferred that respondent knew his opinion was a misrepresentation. Such a misrepresentation of opinion is actionable when the declarant holds himself out to be specially qualified in the area on which he gives the opinion. (*Harazim* v. *Lynam* (1968) 267 Cal.App.2d 127, 131 [72 Cal.Rptr. 670].)

With respect to the issue of intent, respondent was informed that his opinion would be used as the basis to make the decision of whether or not to proceed with an action against Dr. Nork. Respondent was told by the attorneys that first, they needed his evaluation as to the kind of care appellant had received and second, that should he find malpractice, they would want him to act as their expert. Given this testimony, there was sufficient evidence that respondent intended that appellant would rely, through her attorney agents, on his opinion.

Respondent concedes that the issue of justifiable reliance was a factual question which should have been decided by a jury. Similarly, the question of resulting damages was an issue that properly should have been decided by the trier of fact.

While we do not here decide that the jury necessarily would have found for appellant on all the above elements, we conclude that the cause of action for fraud should have been given to the jury. It was therefore error to nonsuit that cause of action.

On the cause of action for negligence, appellant first contends that the trial court erred in submitting the issue of causation to the jury. She argues that she told her former attorneys that she did not want to sue Dr. Nork until they determined that there had been some negligence on his part, that the attorneys set out to locate a medical expert to advise them as to whether or not the case was meritorious, that they contacted respondent who agreed to act as their consultant, and that when respondent informed the attorneys that appellant had received excellent care and that nothing that Dr. Nork did contributed to the amputation of appellant's leg, the attorneys concluded that appellant had no case against Dr. Nork and informed her accordingly. Consequently, appellant failed to file a complaint against Dr. Nork. Since there was no testimony presented to contradict this evidence, appellant claims that there was no triable issue of fact that respondent's negligent opinion was not a legal cause or a proximate cause of her failure to timely file suit against Dr. Nork.

In passing on the credibility of witnesses, the jury is entitled to consider their interests in the result of the case, their motives, and the manner in which they testify. Accordingly, a jury may disbelieve the testimony of witnesses even though it is uncontroverted, if there is any rational ground for doing so. (*Lakenan* v. *Lakenan* (1967) 256 Cal. App.2d 615, 620 [64 Cal.Rptr. 166].) In the instant action, the jury was entitled to consider the testimony of appellant and her previous attorneys in the light of her interest in the outcome of the suit, her attorneys' motives and the manner in which they respectively testified. Therefore, there was no error in submitting the issue of causation to the jury.

Appellant next contends that the instruction actually given on causation was erroneous. The trial court gave an instruction on proximate cause (BAJI No. 3.75). Citing *Werkman* v. *Howard Zink Corp.* (1950) 97 Cal.App.2d 418, 428-431 [218 P.2d 43], appellant argues that the instructions on proximate cause have long been criticized as being confusing, misleading and ambiguous. Additionally, in their comment on the proximate cause instruction, the authors of BAJI state: "Precedent compels the retention of an instruction on causation by stating the 'but for' or 'sine qua non' rule of causation in terms of 'proximate cause'. Restricted to the question of causation alone, the 'but for' rule is adequate for most cases but it fails in a situation in which two or more causes concur to bring about an event, and either of

them, operating alone would have caused the identical result. (See Instruction 3.78.)" (BAJI (6th ed.) p. 101.)

At the trial below, evidence was produced to show that appellant relied on respondent's representations and opinions. In reliance on those opinions she decided not to sue Dr. Nork because she was convinced she had no case against Dr. Nork. This was the cause of her failure to timely file suit against the physician. On the other hand, respondent argued that appellant's former attorneys were negligent in failing to get another opinion and allowing the statute of limitations to run against Dr. Nork.

Even if it was assumed that appellant's former attorneys were negligent, there were two causes which a jury might find to have concurrently brought about the failure of appellant to timely file suit.[3] Conceivably, either the negligence of respondent or the negligence of appellant's former attorneys could have caused the identical result. This is precisely the type of situation where BAJI editors recommend that the instruction on legal cause (BAJI No. 3.76) rather than an instruction on proximate cause (BAJI No. 3.75) should be given.

We agree with appellant's contention that reliance on respondent's representations and opinions was at least one cause of appellant's failure to file suit. Respondent's negligence continued until the moment of detriment when the statute of limitations expired on her cause of action. (See, *Heyer* v. *Flaig* (1969) 70 Cal.2d 223, 230 [74 Cal.Rptr. 225, 449 P.2d 161].) The alleged negligence of appellant's former attorneys in failing to get another opinion or otherwise investigate appellant's case may also be a cause of her failing to timely file suit. Either of these causes operating alone could have caused the same result; i.e., the failure to timely file suit.

Respondent contends that any potential error in giving an instruction on proximate cause was negated by the fact that an instruction on

---

[3]As Prosser notes, "There is some confusion as to the meaning of 'concurring causes' and 'intervening causes.' All causes, whether intervening or otherwise, which materially contribute to the result, may properly be called 'concurring' in a causal sense, while only those which come into active operation later in point of time are 'intervening.' See Notes, 1934, 12 Tex.L.Rev. 518; 1936, 26 Georgetown L.J. 167. It is entirely possible that each of two concurring causes may be an intervening force as to the other." (Prosser, Law of Torts, (4th ed. 1971) § 44, p. 271, fn. 85.)

concurring causes (BAJI No. 3.77)[4] followed immediately. Respondent's reasoning is unconvincing. Rather than alleviate the problem, the giving of BAJI No. 3.77 with proximate cause terminology compounded the confusion.

The difficulty in giving a proximate cause instruction in a situation involving concurring causes lies in the language of the proximate cause instruction. BAJI No. 3.75 states: "A proximate cause of an injury is a cause which, in natural and continuous sequence, produces the injury, and without which the injury would not have occurred." Inherent in this language is the "but for" or "sine qua non" rule, which implies that the defendant's conduct is not a cause of the event, if the event would have occurred without it.

As Prosser has stated: "Restricted to the question of causation alone, and regarded merely as a rule of exclusion, the 'but for' rule serves to explain the greater number of cases; but there is one type of situation in which it fails. If two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed." (Prosser, Law of Torts (4th ed. 1971) § 41, p. 239.) Thus, in *Thomsen* v. *Rexall Drug & Chemical Co.* (1965) 235 Cal.App.2d 775 [45 Cal.Rptr. 642], a case where either of two causes might have caused plaintiff's injury, the court held that ". . . neither cause can be absolved from responsibility on the ground that the identical harm would have occurred without it. The proper rule for such situations is that the defendants' conduct is a cause of the event as it is a material element and a substantial factor in bringing it about [citations]. Whether it was such a substantial factor is for the jury to determine unless the issue is so clear that reasonable men could not differ." (*Id.*, at p. 783.)

In view of the foregoing, it appears that in those cases in which injury would have resulted from either of two causes operating alone, a proximate cause instruction is improper and a legal cause instruction,

---

[4]Pursuant to BAJI No. 3.77, the court instructed: "And there may be more than one proximate cause of an injury. When negligent conduct of two or more persons contributes concurrently as proximate causes of an injury, the conduct of each of said persons is a proximate cause of the injury regardless of the extent to which each contributes to the injury. And a cause is concurrent if it was operative at the moment of injury and acted with another cause to produce the injury. It is no defense that the negligent conduct of a person not joined as a party was also a proximate cause of the injury."

employing the substantial factor test, such as BAJI No. 3.76, should be given. Similarly, BAJI No. 3.78 (Concurring Causes—Either Cause Alone Sufficient)[5] is preferred to BAJI No. 3.77 which utilizes the proximate cause language.

The fact that the jury was required to, and in fact did, use the erroneous proximate cause instruction in its determination is evident from its special finding that respondent's negligence was not a proximate cause of the loss of appellant's cause of action against Dr. Nork. Accordingly, the decision must be reversed.

■ Appellant also contends that as a matter of law any act or omission on the part of appellant's former attorneys could not be a superseding cause and an instruction on this issue constituted reversible error. While it appears that the jury never considered the issue of superseding cause,[6] we consider the question to preclude error in a future trial.

---

[5]BAJI No. 3.78 provides: "Where two causes combine to bring about an injury and either one of them operating alone would have been sufficient to cause the injury, either cause is considered to be a legal cause of the injury if it is a material element and a substantial factor in bringing it about, even though the result would have occurred without it."

[6]The jury was requested to make the following special findings: "1. Was Dr. John G. Nork's treatment of Shirley Diane Hart negligent? Answer yes or no. If your answer to Question No. 1 is Yes, then answer Question No. 2. If your answer to Question No. 1 is No, that he was not negligent, then return a verdict in favor of Dr. Browne and against Shirley Diane Hart. Question 2, was Dr. Browne negligent? Yes or No. If your answer to Question No. 2 is Yes, that he was negligent, then answer the next question, Question No. 3. But if your answer to Question No. 2 is No, then return a verdict in favor of Dr. Browne and against Shirley Diane Hart. Question 3, was Dr. Browne's negligence a proximate cause of the loss of her cause of action against Dr. John G. Nork. Yes or No. If your answer to Question No. 3 is Yes, that is was, then answer Question No. 4. But if your answer to Question No. 3 is No, then return a verdict in favor of Dr. Browne and against Shirley Diane Hart. Question No. 4, were the former attorneys of the plaintiff, Shirley Diane Hart, negligent? Yes or No. If your answer to Question No. 4 is Yes, that they were negligent, then answer Question No. 5. If your answer to Question No. 4 is No, then answer Question No. 7. And Question No. 5 is: Was the negligence of the former attorneys a proximate cause of the loss of plaintiff Shirley Diane Hart's cause of action against Dr. Nork? Yes or No. If your answer is Yes, that it was a proximate cause, then you answer Question No. 6. If your answer to that question is No, then you go to the final question which is Question No. 7. And Question No. 6 is this: Was the negligence of the former attorneys of the plaintiff Shirley Diane Hart a superseding cause of the negligence of Dr. Browne? Yes or No. If your answer to Question No. 6 is Yes, that it was a superseding cause, then return a verdict in favor of Dr. Browne and against the plaintiff Shirley Diane Hart. But if your answer to Question No. 6 is No, that it was not, then answer Question No. 7. And Question No. 7 reads: What is the amount of money damages the plaintiff Shirley

Section 452 of Restatement Second of Torts provides, "(1) Except as stated in Subsection (2)[7], the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm."[8]

Comment "b" to section 452 sets forth the basis upon which the failure of preventive effort is not deemed a superseding cause. That comment states in part: "Subsection (1) states the rule, applicable in the ordinary case, that the failure of the third person to act to prevent harm to the other threatened by the original actor's negligent conduct, is not a superseding cause of such harm, and so does not relieve the actor of liability for the harm which he has in fact caused. *If the third person is under a duty to the other to take such action, his failure to do so will subject him to liability for his own negligence, which is concurrent with that of the actor, for the resulting harm which he has failed to prevent; but his failure to perform his duty does not relieve the original actor of liability for the results of his own negligence. . . .*" (Italics added.)

In *Fish v. Los Angeles Dodgers Baseball Club, supra*, 56 Cal.App.3d 620, the court relied on section 452, subsection (1) and comment "b" to find that a negligent physician was not relieved of the consequences of his lack of care because a subsequent doctor could have avoided the injury. (*Id.*, at p. 636.) We see no reason why this rule should not apply where the subsequent tortfeasors are attorneys.

Respondent argues that *Fish* is distinguishable on the grounds that, there, the defendant doctor initially had the sole responsibility for his patient's care whereas here, respondent was limited to merely an advisory capacity. Consequently, he contends that less of a showing

Diane Hart would reasonably have recovered from Dr. John G. Nork had she timely sued him and obtained a judgment?" Given the fact that the jury answered Question No. 3 in the negative, we must assume it never considered Question No. 6.

[7]Subsection (2) states, "Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause."

[8]Subsection (1) of section 452 has been approved and applied by the California Supreme Court. (*Stewart v. Cox* (1961) 55 Cal.2d 857, 863-864 [13 Cal.Rptr. 521, 362 P.2d 345].) At the time *Stewart* was decided, section 452 did not contain the exception now stated in subsection (2). (*Fish v. Los Angeles Dodgers Baseball Club* (1976) 56 Cal.App.3d 620, 638 [128 Cal.Rptr. 807, 91 A.L.R.3d 1].)

needed to be made to justify a finding that subsequent conduct of another constitutes a superseding cause.

We find no distinction on these grounds. Whether or not the original tortfeasor had the primary or sole responsibility for the victim's welfare is irrelevant. Rather, the germinal issue relates to the scope of foreseeable risk created by the original tortious act. (*Stewart* v. *Cox* (1961) 55 Cal.2d 857, 864-865 [13 Cal.Rptr. 521, 362 P.2d 345]; Rest. 2d Torts, § 452.)

■ Generally speaking, where the risk of injury is reasonably foreseeable, the defendant is liable. "An independent intervening act is a superseding cause relieving the actor of liability for his negligence only if the intervening act is highly unusual or extraordinary and hence not reasonably foreseeable. (4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 628; Rest.2d Torts, §§ 435, 447.) Reasonable foreseeability in this context is a question for the trier of fact. The declaration of rules restricting the actor's responsibility for his negligence is a question of law. (Rest.2d Torts, § 453.)" (*Cline* v. *Watkins* (1977) 66 Cal.App.3d 174, 178 [135 Cal.Rptr. 838].)

■ In the case at bench, the possibility that appellant's former attorneys might rely on respondent's opinion was unquestionably within the scope of foreseeable risk. Respondent held himself out as an expert; appellant and her former attorneys hired him to supply information concerning matters of which they were ignorant; and respondent occupied a position of trust and confidence. Thus, appellant's reliance upon respondent's advice was reasonable and foreseeable. Furthermore, there was no evidence that the attorneys' reliance on respondent's advice was anything but a normal consequence of the situation created by respondent. Appellant and her attorneys were not physicians. On the other hand, respondent was not only a physician but a noted one in the field of orthopedics. He advised appellant and her attorneys as to medical matters entirely within his area of expertise and entirely outside their field of knowledge. Reliance on his opinion was clearly a normal consequence of the situation.

As did the court in *Fish*, we have considered all of the illustrations of exceptional circumstances that relieve the original actor of the foreseeable consequences of his act as set forth in subsection (2) of section 452 of the Restatement. None of these examples of superseding cause bear any similarity to the present action. We thus conclude that the present

case is governed by the tenets of subsection (1) rather than subsection (2) of section 452 of the Restatement Second of Torts, and that there was no evidence in the record to support a finding of superseding cause. Since it is improper to give an instruction that lacks support in the evidence, even if the instruction correctly states the law (*LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 875 [148 Cal.Rptr. 355, 582 P.2d 946]), it was error to instruct the jury on superseding cause in the present case.

Judgment is reversed.

Taylor, P. J., and Rouse, J., concurred.

Petitions for a rehearing were denied April 30, 1980.