[No. H000244. Sixth Dist. Mar. 5, 1987.]

JOHN B. GUNN LAW CORP., Plaintiff, Cross-defendant and Respondent,
v.
SMILJA MAYNARD, Defendant, Cross-complainant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to rule 976.1 of the California Rules of Court, it is ordered that the portions of the opinion designated as part IV and the appendix be deleted from the published version of the opinion.

COUNSEL

Vincent J. Kilduff for Defendant, Cross-Complainant and Appellant.

Robert J. Glynn, Camille K. Fong, Glynn & Harvey and Gary E. Gamel for Plaintiff, Cross-defendant and Respondent.

OPINION

AGLIANO, P. J.—

I

An attorney's complaint, seeking compensation for services rendered based on a written contingent fee contract, encountered the client's cross-complaint alleging legal malpractice. After trial, the jury returned verdicts which awarded the attorney $208,000 in damages for the client's breach of the fee contract and rejected the cross-complaint. The client appeals from the ensuing judgment, which we will affirm on the complaint and reverse on the cross-complaint because of instructional error on the issue of proximate cause.

II

*Background Facts*

Defendant and cross-complainant Smilja Maynard (Mrs. Maynard) met Merlin Maynard on June 7, 1975, when he employed her as a part-time live-in housekeeper. At the time he was 75 years old and affected by Parkinson's disease. She was then 55. In August, she assumed the position full-time, and they married on September 12, 1975.

In April 1976, they contacted John Hopkins, an attorney, to prepare a will for Dr. Maynard. Mr. Hopkins learned that some of Dr. Maynard's assets were in a living trust created when Dr. Maynard's first wife was alive. In investigating the facts, Mr. Hopkins was incorrectly apprised the residence real property was not in the trust. Mr. Hopkins prepared a will which Dr. Maynard executed on May 21, 1976. The will disposed of property in the trust by an exercise of the testator's power of appointment, but purported to devise the residence to Mrs. Maynard separately—not under the power of appointment. This mistake played a part in subsequent litigation.

Mr. Hopkins prepared a second will at the Maynards' request, which Dr. Maynard executed on June 21, 1976, but immediately revoked.

Mrs. Maynard took her husband to a convalescent hospital in October 1977 because his health had deteriorated. He died there on February 5, 1978.

### III

*The Fee Agreement and Underlying Litigation*

Mrs. Maynard initially retained Rolf Bondelie, who filed a petition to probate Dr. Maynard's will. When relatives of the decedent objected to probate, Mr. Bondelie informed her he had a conflict of interest and she should consider hiring another attorney to defend her.

A mutual friend who was also an attorney introduced Mrs. Maynard to John Gunn, representing plaintiff and cross-defendant John B. Gunn Law Corp. (Gunn). At their first meeting they reviewed the two wills and the trust agreement. Afterwards, Gunn began to investigate the law and the facts, speaking to their mutual friend and once to Mr. Bondelie and researching the law. They met again about one or two weeks later on May 17, 1978, in Gunn's office for a couple of hours, discussing Mrs. Maynard's knowledge of the preparation of the wills and exploring the case in greater depth. Gunn agreed to accept the case, subject to a written fee agreement. He continued to analyze the case after that meeting. On May 22, 1978, Mrs. Maynard came to his office and read and signed a fee agreement which he presented to her.

The contingent fee agreement recited it was entered into in contemplation of litigation with both the heirs and Wells Fargo Bank, who challenged whether the May 21, 1976 will effectively passed the house to Mrs. Maynard without exercising the testator's power of appointment.

The fee agreement obligated Gunn to seek for Mrs. Maynard all assets of her husband's inter vivos trust and his estate. If Gunn failed to recover any property, Mrs. Maynard was obligated to reimburse out-of-pocket costs and to pay a $2,000 retainer. If Gunn recovered any property for her, she owed him, at a minimum, $75 per hour of his services, or 25 percent of the property's value if the case was resolved within six months or 33 1/3 percent thereafter.

After the fee agreement was signed, Gunn contacted Gerald Hansen, the lawyer representing the will contestants, and otherwise undertook to represent Mrs. Maynard's interests, pursuing discovery and identifying issues. Mrs. Maynard visited or called his office on a weekly basis. None of the central issues regarding the effect and validity of the will had been resolved when Gunn presented an addendum to the fee agreement to Mrs. Maynard to sign. On March 21, 1979, he called her to a meeting at a restaurant where she read and signed the addendum, initialing a clause which he had typed over.

On April 23, 1979, Gunn argued for a partial summary adjudication on the power of appointment issue. The court accepted his arguments, and by order dated May 3, 1979, determined that, despite the technical error, the will effectively disposed of the residence to Mrs. Maynard.

On October 1, 1979, the will contest was settled. The heirs' allegations of Dr. Maynard's lack of testamentary capacity and Mrs. Maynard's undue influence were dropped and the May 21 will was accepted as valid. Mrs. Maynard received the residence and its contents, with a value of $465,000, on the conditions that she would be responsible for taxes, the contestants would receive $35,000 cash, and minor issues were deferred. Mrs. Maynard had not paid Gunn any fees before he commenced this litigation.

IV*

. . . . . . . . . . . . . . . . . .

V

*The Cross-complaint*

Mrs. Maynard asserts error involving the professional negligence cause of action in her cross-complaint against Gunn. She claimed Gunn allowed the statute of limitations to run before filing a complaint for legal malpractice against John Hopkins for negligently drafting her husband's will.

■ In order to prevail against Gunn, she had to demonstrate his negligence caused her to lose a meritorious claim against Hopkins. (*Lally* v. *Kuster* (1918) 177 Cal. 783, 791 [171 P. 961]; *Smith* v. *Lewis* (1975) 13 Cal.3d 349, 361 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231] (disapproved on another ground in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14) [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]); *Campbell* v. *Magana* (1960) 184 Cal.App.2d 751, 754-757 [8 Cal.Rptr. 32], and cases there cited.) In other words, she had to show she would have prevailed on a legal malpractice claim against Mr. Hopkins had Gunn not allowed the statute of limitations to run, as indeed he had.

The jury's special verdicts found that Mr. Hopkins had been negligent, but that his negligence did not cause Mrs. Maynard damage. Therefore, as the special verdicts were structured, the jury was not required to reach the issue whether Gunn was negligent, since it determined any possible negligence of Gunn was not a proximate cause of injury to Mrs. Maynard.

---

*See footnote, *ante,* page 1565.

 Mrs. Maynard asserts the trial court gave the jury the wrong instructions on causation, refusing her own requested instructions. We review the evidence on this point in her favor. (*Sills* v. *Los Angeles Transit Lines* (1953) 40 Cal.2d 630, 633 [255 P.2d 795]; *Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 548 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158].)

### A. *Damages Caused by Legal Malpractice*

While Gunn was retained by Mrs. Maynard to obtain distribution of her husband's assets and defend her in the will contest, he also undertook to sue the will drafter on her behalf. The jury was instructed that Gunn had filed a legal malpractice complaint against Mr. Hopkins on May 7, 1979, alleging negligent preparation of the will, which action was dismissed because the statute of limitations had run.

Mrs. Maynard's legal expert testified Mr. Hopkins should have drafted her husband's will differently to avoid confusion about his intent that she, as his wife, inherit their home. Mr. Hopkins should have discovered the home was an asset of an existing trust. The will should have invoked the testator's power of appointment over the house to dispose of it to Mrs. Maynard but it did not.

In Mrs. Maynard's view, Hopkins's negligence caused her to incur the legal fees and expenses involved in resisting the challenge of her husband's relatives as to the power of appointment issue. Prior to trial, she had not paid any attorney's fees to Gunn or her prior probate attorney, but, of course, the trial on Gunn's complaint determined she was obligated under their contingent fee contract for 33 1/3 percent of the value of the property he recovered for her.

Mrs. Maynard's legal expert offered an opinion that the issues of testamentary capacity and undue influence would not have been raised in the will contest if the issue of exercise of the power of appointment had not been manifest. At the same time, he acknowledged, "if you are going to contest a will, you contest it on every possible ground." He also acknowledged that, on the facts, undue influence was an arguable issue.

### B. *The Requested Instructions*

 No one disputes that an attorney's negligence need not be the sole proximate cause of a client's loss to establish a case of malpractice. (*Modica* v. *Crist* (1954) 129 Cal.App.2d 144, 147-148 [276 P.2d 614]; *Ishmael* v. *Millington* (1966) 241 Cal.App.2d 520, 529 [50 Cal.Rptr. 592]; *Cline* v.

*Watkins* (1977) 66 Cal.App.3d 174, 178 [135 Cal.Rptr. 838].) Mrs. Maynard complains that the trial court should have given BAJI No. 3.76 and/or BAJI No. 3.78 at her request, rather than BAJI No. 3.75 at Gunn's request.

Mrs. Maynard requested the following instruction based on BAJI No. 3.76: "A legal cause of injury is a cause which is a substantial factor in bringing about the injury." Mrs. Maynard also requested the following instruction based on BAJI No. 3.78: "Where two causes combine to bring about an injury and either one of them operating alone would have been sufficient to cause the injury, either cause is considered to be a [proximate] [legal] cause of the injury if it is a material element and a substantial factor in bringing it about, even though the result would have occurred without it."

Instead the court gave the following instruction based on BAJI No. 3.75: "A proximate cause of injury, damage, loss or harm is a cause which, in natural and continuous sequence, produces the injury, damage, loss or harm, and without which the injury, damage, loss or harm would not have occurred."

Mrs. Maynard points out the jury during deliberations asked the court by a note, "What is the legal definition of proximate?" Despite Mrs. Maynard's renewed request for her concurrent cause instructions, the court simply reread BAJI No. 3.75 to the jury. The jury later requested a written copy or another rereading of BAJI No. 3.75, and received another rereading.

Two criticisms have been leveled at the definition of cause provided by BAJI No. 3.75, derived from *Baillargeon* v. *Myers* (1919) 180 Cal. 504, 508 [182 P. 37]. One is that it introduces the legal term of art "proximate" to a jury, with misleading connotations of physical or temporal "nearness." (*Fraijo* v. *Hartland Hospital* (1979) 99 Cal.App.3d 331, 346 [160 Cal.Rptr. 246]; Com. on BAJI No. 3.75, BAJI (7th ed. 1986) p. 93.) However, while the "substantial factor" language of BAJI No. 3.76 may be preferable because it is more intelligible to a layperson, it has never been held error in California to instruct in terms of BAJI No. 3.75 due to lack of intelligibility. (*Fraijo, supra,* at pp. 346-347.)

The other criticism of BAJI No. 3.75 is that it imposes "the 'but for' or 'sine qua non' rule, which implies that the defendant's conduct is not a cause of the event, if the event would have occurred without it." (*Hart* v. *Browne* (1980) 103 Cal.App.3d 947, 961 [163 Cal.Rptr. 536].) This test of causation is said to be adequate for most situations, but it fails where liability would be avoided because defendant's act or omission concurred with another cause and either cause alone would have been sufficient to bring about the

injurious event. (*Thomsen* v. *Rexall Drug & Chemical Co.* (1965) 235 Cal.App.2d 775, 782 [45 Cal.Rptr. 642]; see Prosser & Keeton on Torts (5th ed. 1984) § 41, pp. 266-267.) In the latter situation, it has been found error to give BAJI No. 3.75 instead of Nos. 3.76 and/or 3.78. (*Hart, supra,* 103 Cal.App.3d 947, 961-962; *McGee* v. *Cessna Aircraft Co.* (1983) 139 Cal.App.3d 179, 191 [188 Cal.Rptr. 542]; see Use Notes and Com. to BAJI Nos. 3.75, 3.76, 3.78, *supra,* pp. 91-96, 99.)

Mrs. Maynard argues the evidence presented one of these latter situations. Her contention is that Hopkins's negligence in drafting the will furnished the will contestants with an avenue for attack, though they also raised other issues. Although Mrs. Maynard ultimately prevailed on this issue and the other issues were settled, she was required to retain Gunn and incur an obligation for litigation expenses in order to do so.

Mrs. Maynard contends that BAJI No. 3.75 was inappropriate and BAJI No. 3.78 was required because there was evidence of concurring causes of her litigation expenses. On the one hand there was evidence, as Gunn argues, "Maynard would have been dragged into litigation over the validity of the will regardless of how the powers within the will were drafted." On the other hand, Maynard argues there was evidence showing that "the substantial issue was, in fact, the power of appointment, and that was the issue that caused this whole series of legal events to commence."

The crux of Mrs. Maynard's argument is that the existence of the power of appointment issue caused her to retain Gunn, because as soon as she executed the contingent fee contract, she became obligated, at a minimum, for out-of-pocket costs and $2,000 in attorney's fees.

Making the choice between BAJI Nos. 3.75 and 3.78 requires the trial court to perform a preliminary analysis of the evidence to determine whether BAJI No. 3.75 should be ruled out as providing an improper test in that particular case.

Here the trial court was confronted with evidence from attorney Hansen for the contestants that the relatives objected to probate of the will because they viewed Mrs. Maynard as an interloper in their family. Opposed to this was the contemporaneous recital in the contingent fee contract that it was being entered into in relation to the power of appointment issue, without mention of the issues of undue influence or testamentary capacity. (Civ. Code, § 3535.) The conclusion that Gunn would not have been hired but for the power of appointment issue is rebutted by evidence showing Mrs. Maynard would have incurred legal expenses anyway in resisting the will contest. The conclusion that Gunn would not have been hired but for the

relatives' claims of undue influence and lack of testamentary capacity is undermined by the contingent fee contract recital and its underlying factual basis.

In short, No. 3.78 and not No. 3.75 should have been given where the injury (incurring legal fees) could have been produced by either of two causes, and the defendant's conduct is one of those causes.

There was at least a factual question concerning what factor or combination of factors caused Mrs. Maynard to retain Gunn, and so BAJI No. 3.78, if not also 3.76, should have been given. ■ A trial court should not resolve evidentiary conflicts in determining whether there is some substantial evidence warranting an instruction presenting a party's theory of the case. (*Phillips* v. *G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 808 [13 Cal.Rptr. 401, 362 P.2d 33]; *Hasson* v. *Ford Motor Co., supra,* 19 Cal.3d 530, 548; *Ng* v. *Hudson* (1977) 75 Cal.App.3d 250, 261 [142 Cal.Rptr. 69].) **(2c)** This state of the evidence posed a question for the jury whether Hopkins's mistake in will drafting was a substantial factor in bringing about Mrs. Maynard's obligation for litigation expenses (the amount of which was determined by the same jury).

The trial court's error in giving BAJI No. 3.75 instead of 3.78 was necessarily prejudicial because Mrs. Maynard was deprived of jury consideration of her theory of the case, and because Gunn was allowed to make precisely the kind of argument under BAJI No. 3.75 which BAJI No. 3.78 was designed to prevent.

## VI

We affirm the judgment on Gunn's complaint for attorney's fees. We reverse the judgment on Mrs. Maynard's cross-complaint for legal malpractice due to instructional error. In light of this conclusion, we need not analyze Mrs. Maynard's final contention that substantial evidence did not support the jury's special verdict that Hopkins's negligence did not cause her injury. Each party to bear his and her own expenses.

Brauer, J., and Capaccioli, J., concurred.

A petition for a rehearing was denied March 25, 1987, and respondent's petition for review by the Supreme Court was denied May 20, 1987.