[No. A062846. First Dist., Div. One. Sept. 1, 1994.]

EMORY THOMAS, Plaintiff and Respondent, v.
BENJAMIN LUSK, JR., Defendant and Appellant.

## Counsel

Benjamin Lusk, Jr., and Donald M. Brown for Defendant and Appellant.

Oreck & Oreck and Eugene R. Oreck for Plaintiff and Respondent.

## Opinion

**NEWSOM, J.**—On July 22, 1987, respondent Emory Thomas was employed as an "aircraft repairer" at the Alameda Naval Air Station. While disassembling a jet engine in the course of his employment duties, respondent used a Garland No. 4 split-head hammer (hereafter the hammer), which he obtained from the "special tool rack," to remove a disk from the turbine shaft of the jet engine. As he swung the hammer at the disk, the metal head disengaged from the handle, causing his left hand to contact the turbine blades. He sustained a severe injury to his left index finger.

Immediately after respondent's accident, fellow employee Gary Niehaus retrieved the broken hammer which was in four parts, and turned it over to his supervisor, Robert Todd, the following morning. Todd placed the hammer in a locked drawer of a file cabinet in his office, along with "past history

data records." Thereafter, the file cabinet drawer remained locked, with Todd in possession of the keys, and was opened only infrequently and briefly for retrieval and examination of records. In October or November of 1988, the lock on the file cabinet was broken; the cabinet then became accessible even without keys. On January 15, 1989, Todd was promoted and transferred to another building.

Upon his release from the hospital four days after the accident, respondent "went out looking" for the hammer. He spoke with other employees who had seen the hammer, but was unable to locate it.

Respondent retained appellant Benjamin Lusk, Jr., on March 21, 1988, to represent him in a products liability action filed against the manufacturer of the hammer, Garland Manufacturing Company. Appellant did not promptly initiate any formal discovery proceedings, although he spoke with one of the witnesses whose statements had been provided by appellant, and attended depositions scheduled by the opposition. Appellant also consulted with Accurate Manufacturing, a machine shop in Emeryville, which did not consider the hammer to have "a design defect of any kind." Appellant testified that approximately five weeks after he was retained by respondent he contacted an unidentified "male attorney" in the "General Counsel's Office" of the Alameda Naval Air Station, who mentioned that the hammer was "stored somewhere." Appellant did not then retain the name of the attorney with whom he spoke or undertake further efforts to acquire the hammer.

Not until early March of 1988 did appellant contact Ann Wansley, who was then counsel at the naval air station, in search of the hammer.[1] Wansley asked her paralegal "to check and ascertain whether anybody still had the hammer . . . ." Robert Todd searched the file cabinet in which he had previously placed the hammer and consulted the acting shop foreman, but the hammer was not located. Wansley sent appellant a letter dated March 28, 1989, in which she stated that the search for the hammer was unsuccessful, although "identical" hammers were available for inspection.

Respondent's deposition was taken in March of 1989, and "a couple of weeks" later appellant advised respondent that "it would be very difficult to try the case. . . ." Appellant was concerned particularly that the handle of the hammer may have been modified or a new, longer handle installed, which would compromise respondent's product liability case against the

---

[1]Wansley testified that from January of 1985 to March of 1989, she was the only attorney at the Alameda Naval Air Station, assisted only by a female paralegal. Jerry Flannery did not join the office as associate counsel until March 13, 1989.

manufacturer.[2] Appellant still believed the case had "significant settlement value," however.

Arbitration of the case was scheduled for March 12, 1990. Respondent and counsel for the manufacturer were present, along with the arbitrator, but appellant had a schedule conflict and never appeared. The arbitrator "made an arbitration award in favor of the defense." Respondent then retained new counsel, and his case against Garland Manufacturing Company was eventually settled for $35,000.

Respondent filed the present action against appellant for legal malpractice on May 20, 1991. After a jury trial, a verdict in favor of respondent in the amount of $88,745.61 was rendered. Appellant's motions for a judgment notwithstanding the verdict and for a new trial were denied, and this appeal followed.

■ Appellant complains that the trial court erred by giving an instruction which shifted the burden of proof on the element of causation to the defense. The challenged instruction was a modified version of CALJIC No. 2.60, and, in pertinent part, advised the jury: "In order for plaintiff to recover from defendant in this case, plaintiff must prove, by a preponderance of the evidence, that the failure of defendant to gain access to the hammer involved in plaintiff's accident of July 22, 1987, was negligent. If plaintiff proves that defendant was negligent, as described above, it then becomes the duty of defendant to prove, by a preponderance of the evidence, that defendant's negligent failure to obtain access to the hammer was not a legal cause of loss or damage to plaintiff." Appellant argues that an instruction which shifted the burden to the defense to prove lack of causation was erroneous absent evidence that the hammer was "more readily available to the defendant than to the plaintiff."

■ The action for legal malpractice against appellant demanded proof that appellant's negligence caused respondent to lose a meritorious products liability claim against the manufacturer of the hammer. (*John B. Gunn Law Corp.* v. *Maynard* (1987) 189 Cal.App.3d 1565, 1569 [235 Cal.Rptr. 180].) An attorney, " 'by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. [Citations.]' " (*Kirsch* v. *Duryea* (1978) 21 Cal.3d 303, 308 [146 Cal.Rptr. 218, 578 P.2d

[2]Conflicting evidence was presented at trial on the issue of whether the hammer used by respondent had a standard length handle, or had been modified by substituting a longer handle.

935, 6 A.L.R.4th 334]; see also *McDaniel* v. *Gile* (1991) 230 Cal.App.3d 363, 375 [281 Cal.Rptr. 242]; *Enriquez* v. *Smyth* (1985) 173 Cal.App.3d 691, 696 [219 Cal.Rptr. 267].) ■ " 'The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.]' " (*Jackson* v. *Johnson* (1992) 5 Cal.App.4th 1350, 1355 [7 Cal.Rptr.2d 482]; see also *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; *Purdy* v. *Pacific Automobile Ins. Co.* (1984) 157 Cal.App.3d 59, 76 [203 Cal.Rptr. 524].) ■ Thus, ". . . an attorney is liable for malpractice when his negligent investigation, advice, or conduct of the client's affairs results in loss of the client's meritorious claim." (*Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 900 [218 Cal.Rptr. 313, 705 P.2d 886].)

At issue in this appeal is the element of causation, which required respondent to establish that he would have prevailed, or at least been more successful, in the products liability case absent appellant's failure to preserve the evidence of the hammer. (*John B. Gunn Law Corp.* v. *Maynard, supra,* 189 Cal.App.3d at p. 1569.) ■ " '[A] client claiming that his [or her] attorney was negligent in connection with litigation has the burden of proving that damages resulted, this burden involving, usually, the difficult task of demonstrating that, but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question.' (Annot. (1956) 45 A.L.R.2d 19, 21, § 5.) 'Thus the issue of liability includes not only a showing the attorney was negligent but also a showing his [or her] negligence caused damage.' (*Cook* v. *Superior Court* (1971) 19 Cal.App.3d 832, 834 [97 Cal.Rptr. 189].)" (*Sukoff* v. *Lemkin* (1988) 202 Cal.App.3d 740, 744 [249 Cal.Rptr. 42].) To prevail, appellant essentially was obligated to " 'retry' " the products liability action against Garland Manufacturing Company. (*Ibid.*)[3]

---

[3]An action for strict products liability requires proof of the following elements: "(1) the product is placed on the market; (2) there is knowledge that it will be used without inspection for defect; (3) the product proves to be defective; and (4) the defect causes injury to a human. [Citation.]" (*McCreery* v. *Eli Lilly & Co.* (1978) 87 Cal.App.3d 77, 83 [150 Cal.Rptr. 730].) The theory of strict liability cannot be equated with absolute liability; a manufacturer "does not thereby become the insurer of the safety of the products user." (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 733 [144 Cal.Rptr. 380, 575 P.2d 1162].) Causation is a necessary element in strict liability just as it is in negligence liability. (*Garman* v. *Magic Chef, Inc.* (1981) 117 Cal.App.3d 634, 638 [173 Cal.Rptr. 20].) Liability must be predicated upon a showing that a defect in the product was a proximate cause of plaintiff's injury. (*Fluor Corp.*

■ In negligence and products liability cases, the doctrine has evolved that the burden of proof on the issue of causation may be shifted to the defendant where demanded by public policy considerations. (*Fagerquist* v. *Western Sun Aviation, Inc.* (1987) 191 Cal.App.3d 709, 723 [236 Cal.Rptr. 633].) "[T]he shift of the burden of proof . . . may be said to rest on a policy judgment that when there is a substantial probability that a defendant's negligence was a cause of an accident, and when the defendant's negligence makes it impossible, as a practical matter, for plaintiff to prove 'proximate causation' conclusively, it is more appropriate to hold the defendant liable than to deny an innocent plaintiff recovery, unless the defendant can prove that his negligence was *not* a cause of the injury." (*Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 774, fn. 19 [91 Cal.Rptr. 745, 478 P.2d 465] [hereafter *Haft*]; see also *Simmons* v. *West Covina Medical Clinic* (1989) 212 Cal.App.3d 696, 703 [260 Cal.Rptr. 772]; *Smith* v. *Americania Motor Lodge* (1974) 39 Cal.App.3d 1, 6 [113 Cal.Rptr. 771, 88 A.L.R.3d 1188].)

The essential principle underlying this narrow exception to the usual allocation of proof is that the burden of proving an element of a case is more appropriately borne by the party with greater access to information. (*People* v. *Medina* (1990) 51 Cal.3d 870, 885 [274 Cal.Rptr. 849, 799 P.2d 1282]; *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588, 599 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061]; *Harris* v. *Irish Truck Lines, Inc.* (1974) 11 Cal.3d 373, 378 [113 Cal.Rptr. 489, 521 P.2d 481]; *Grill* v. *Hunt* (1992) 6 Cal.App.4th 73, 79 [7 Cal.Rptr.2d 768]; *Ott* v. *Workers' Comp. Appeals Bd.* (1981) 118 Cal.App.3d 912, 922 [173 Cal.Rptr. 648].) "[A] defendant who is in a better position to discover and preserve . . . evidence should not be permitted to profit from the plaintiff's inability to produce it." (*Harris* v. *Irish Truck Lines, Inc., supra,* 11 Cal.3d at p. 380.)

No definitive or "general rule" exists which delineates the circumstances under which the defendant in a products liability case must prove noncausation of the plaintiff's injuries. (*Endicott* v. *Nissan Motor Corp.* (1977) 73 Cal.App.3d 917, 928 [141 Cal.Rptr. 95, 9 A.L.R.4th 481].) A shift in the normal allocation of the burden of proof is based upon consideration of a " 'number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact.' " (*McGee* v. *Cessna Aircraft Co.* (1983) 139 Cal.App.3d 179, 187 [188 Cal.Rptr. 542, A.L.R.4th 3124]; quoting from Law Revision Com. com. to Evid. Code, § 500.)

v. *Jeppesen & Co.* (1985) 170 Cal.App.3d 468, 476 [216 Cal.Rptr. 68]; *Arthur* v. *Avon Inflatables, Ltd.* (1984) 156 Cal.App.3d 401, 405 [203 Cal.Rptr. 1].)

■  We agree with respondent that the evidence establishes appellant's negligent failure to preserve the evidence of the hammer. As respondent's attorney, appellant assumed the obligation to conduct reasonable research and undertake discovery necessary to make an informed decision as to a course of conduct based upon an intelligent assessment of the case. (See *Aloy* v. *Mash* (1985) 38 Cal.3d 413, 418 [212 Cal.Rptr. 162, 696 P.2d 656]; *Smith* v. *Lewis* (1975) 13 Cal.3d 349, 358-359 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231].) The record shows that appellant did not vigorously and expeditiously seek discovery of the hammer. Although he learned soon after being retained by respondent that the hammer was being "stored somewhere," he did not undertake any efforts to obtain it or at least ensure its preservation until approximately one year later.  ■  Nevertheless, while we would not entirely foreclose shifting the burden of proof of causation in actions for legal malpractice, we conclude that the trial court erred in doing so under the particular facts presented in the case before us.

First, the lost evidence is no more available to appellant than respondent. The hammer was disposed of by a party unknown, and as a result neither appellant nor respondent has access to it to satisfy the burden of proof on the causation issue. However, both parties still have equal access to hammers essentially identical to the one which injured respondent. Thus, appellant has no better means of negating causation than has respondent of proving it. (Cf. *Sindell* v. *Abbott Laboratories*, *supra*, 26 Cal.3d at pp. 600-601; *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 431-435 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].)

Further, examination of the relative culpability of the parties does not persuade us that a shift in the burden of proof is appropriate. Following the accident, the hammer was preserved temporarily, available to both appellant and respondent. Of course, as respondent's attorney, appellant must be considered primarily responsible during the course of the litigation for the preservation of evidence. Even so, respondent's access to the hammer indicates to us that appellant cannot be held solely accountable for the loss of the evidence. (Cf. *Smith* v. *Americania Motor Lodge*, *supra*, 39 Cal.App.3d at p. 6.) Respondent's employer also must share the fault for the disappearance of the evidence. The Alameda Naval Air Station had custody of the hammer and was in a position to preserve it, but failed to do so.[4] Appellant's negligence was not singularly responsible for the harm inflicted

---

[4] We observe that respondent did not bring an action against his former employer for negligent spoliation of evidence. (Cf. *Williams* v. *State of California* (1983) 34 Cal.3d 18,

upon respondent by the destruction of evidence of causation, a factor which distinguishes the present case from *Haft, supra,* 3 Cal.3d at pages 773-774.

Finally, and to us the most significant consideration, respondent has not established a "prima facie" case or "substantial probability" of causation, as is a condition precedent to a shift in the burden of proof. (*Harris* v. *Irish Truck Lines, Inc., supra,* 11 Cal.3d at p. 378; *Haft, supra,* 3 Cal.3d at p. 774, fn. 19; *Simmons* v. *West Covina Medical Clinic, supra,* 212 Cal.App.3d at p. 703; *Moreno* v. *Fey Manufacturing Corp.* (1983) 149 Cal.App.3d 23, 27 [196 Cal.Rptr. 487]; *McGee* v. *Cessna Aircraft Co., supra,* 139 Cal.App.3d at p. 188; *Smith* v. *Americania Motor Lodge, supra,* 39 Cal.App.3d at p. 6.) While we realize that loss of evidence impedes proof of causation, we think the foundational showing made by respondent falls far short of the requisite standard.

First, the record does not indicate with certainty that the hammer would have been available to appellant had he acted with greater dispatch once he was retained by respondent in March of 1988. We do not know when the evidence was destroyed or lost by respondent's employer, but even prompt initiation of discovery by appellant may not have produced the hammer.

We are also not convinced that preservation of the missing evidence was critical to respondent's products liability case against the manufacturer of the hammer. We acknowledge the rather obvious testimony of respondent's expert that the burden of proving a manufacturing defect in the product, or a foreseeable alteration of the hammer which rendered it defective, was made more difficult by the loss of the hammer. But the burden of proving causation is not transferred merely upon testimony that the defendant's negligence may have compromised the plaintiff's ability to establish a products liability case. (*Fagerquist* v. *Western Sun Aviation, Inc., supra,* 191 Cal.App.3d at pp. 724-725.) Rather, the burden of proof is shifted only "when there is a substantial probability that the defendant's negligence was a cause of an accident, and when the defendant's negligence makes it impossible, as a practical matter, for plaintiff to prove 'proximate causation' conclusively . . . ." (*Haft, supra,* 3 Cal.3d at p. 774, fn. 19; *Simmons* v. *West Covina Medical Clinic, supra,* 212 Cal.App.3d at p. 703.) Respondent has not adduced evidence which suggests to us that a defect in the lost hammer was provable if only the evidence had been preserved by appellant.

27-28 [192 Cal.Rptr. 233, 664 P.2d 137]; *Velasco* v. *Commercial Bldg. Maintenance Co.* (1985) 169 Cal.App.3d 874, 877-878 [215 Cal.Rptr. 504].)

We further find on the record before us that appellant's negligence did not make proof of causation "impossible" for respondent as a practical matter. "Identical" hammers were still available to respondent, along with the testimony of witnesses to the accident, to prove a defect in the product. Thus is the case distinguishable from *Haft*, where the facts available to the plaintiff provided a strong and direct inference of causation and the defendant's negligence absolutely precluded further, definitive proof that the harm to the plaintiff was caused by the defendant's negligence. (Cf. *Simmons* v. *West Covina Medical Clinic, supra*, 212 Cal.App.3d at pp. 703-704.) We cannot sanction a shift in the burden of proof of causation upon nothing more than speculation of a better result in the products liability case absent appellant's negligence. (*Endicott* v. *Nissan Motor Corp., supra*, 73 Cal.App.3d at p. 928; *Smith* v. *Americania Motor Lodge, supra*, 39 Cal.App.3d at pp. 6-7.)

■ The instruction given by the trial court was also defective in substance, as it did not merely alter but entirely dispensed with respondent's burden to prove the element of causation. The challenged instruction advised the jury that upon mere proof by respondent of appellant's negligence, appellant then assumed the obligation to prove lack of causation. Even when a shift in the burden of proof is appropriate, the plaintiff still must make at least a prima facie showing of causation. (*Moreno* v. *Fey Manufacturing Corp., supra*, 149 Cal.App.3d at p. 27; *McGee* v. *Cessna Aircraft Co., supra*, 139 Cal.App.3d at p. 188.) The trial court erred by instructing the jury that appellant must disprove his negligence as the cause of respondent's harm without any showing of causation by respondent. (*Stone* v. *Foster* (1980) 106 Cal.App.3d 334, 356 [164 Cal.Rptr. 901].)

■ The judgment must be reversed if it is reasonably probable that a more favorable decision would have resulted in the absence of error. (*Cervantez* v. *J. C. Penney Co.* (1979) 24 Cal.3d 579, 591 [156 Cal.Rptr. 198, 595 P.2d 975]; *Moreno* v. *Fey Manufacturing Corp., supra*, 149 Cal.App.3d at p. 27.) The effect of the error was to entirely eliminate the element of causation from respondent's legal malpractice case against appellant. Although he was in no better position to carry the burden of proof than respondent, appellant was then forced to prove that the discarded evidence was not the cause of respondent's reduced recovery in the products liability suit. The evidence of causation was inconclusive, with a finding that appellant's negligence did not cause respondent's harm entirely supportable based upon the evidence presented. We accordingly conclude that the error was prejudicial to appellant. (*Fagerquist* v. *Western Sun Aviation, Inc., supra*, 191 Cal.App.3d at p. 726.)

The judgment is reversed and the case is remanded to the trial court for proceedings not inconsistent with the views expressed herein. Costs to appellant.

Strankman, P. J., and Stein, J., concurred.