.HANS NORTH *vs.* JULIUS JOHNSON *et al.*

ERIC SKOGLUND *vs.* SAME *et al.*

Argued June 27, 1894.    Reversed July 17, 1894.

Nos. 8909, 8910.

**Such damages only as are the natural and proximate consequence of the tort are recoverable.**

Actions on a bond executed pursuant to Laws 1885, ch. 205, entitled "An act to regulate employment bureaus and offices." The alleged breach of its condition was the false and fraudulent statement of the principal that he was authorized to employ plaintiffs to work at Halstad, Minn., and sending them to that place for that purpose. *Held* that, upon the facts of this case, damages caused by privation and discomfort resulting from the fact that plaintiffs had no money to buy food and pay their fare home were not the natural and proximate consequence of the defendant's wrongful act.

**Exemplary damages not recoverable against sureties in a contract.**

Also that exemplary damages are not recoverable against the sureties on the bond, although the act of the principal constituting the breach of its condition was a willful tort.

Appeal by defendants, Julius Johnson, Chris Goehrenger and Martin F. Collins, from an order of the Municipal Court of the City of Minneapolis, *Stephen Mahoney*, J., made February 3, 1894, denying their motion for a new trial of an action brought against them by Hans North. They also appeal from the judgment entered against them December 8, 1893, in the same action for $130 and costs.

Appeal also by the same defendants from an order of the same court made the same day denying their motion for a new trial in another action brought against them by Eric Skoglund for a similar cause and tried at the same time before the same jury.

Defendant, Julius Johnson, obtained license under Laws 1885, ch. 205, to keep and carry on an employment bureau or agency at No. 133 1/2 Nicollet Avenue, Minneapolis. He, as principal, with the two other defendants, as his sureties, gave bond to the state in the penal sum of $10,000, conditioned as provided by that statute to pay any and all fines that might be imposed on him for violation of the law and all damages any person hired by him might sustain by reason

of his unauthorized act, fraud or misrepresentation. On September 7, 1893, he employed the plaintiff in each of these actions for A. R. Dalrymple to thresh grain at Halstad for $1.75 a day and board. They each paid him $6, and went out that night by railroad with cards to Dalrymple. He told them they were too late for threshing, and refused to employ them. They returned to Minneapolis on foot, out of money, begging food, and sleeping under grain stacks at night. Each brought an action on the bond against Johnson and his sureties, alleging fraud and misrepresentation, and demanding damages for loss of time, physical suffering, distress of mind, and humiliation. Each obtained a verdict for $130, on which in North's case judgment was entered. Defendants moved in each case for a new trial. Being denied they appeal.

*Day & Enches*, for appellants.

The trial court allowed evidence to be introduced over defendants' objection, tending to show that plaintiffs were out of money and had to walk back, sleep out doors in hay and straw stacks, to beg for food and eat wild plums and green corn. Such damages are too remote and speculative to be the basis of a verdict in a case of this kind. There is too much room for contingencies and intervening causes between the hiring and the alleged injury. *O'Neill* v. *Johnson*, 53 Minn. 439; *Cushing* v. *Seymour, Sabin & Co.*, 30 Minn. 301; *Simmer* v. *City of St. Paul*, 23 Minn. 408; *Swinfin* v. *Lowry*, 37 Minn. 345; *Carsten* v. *Northern Pac. R. Co.*, 44 Minn. 454.

For the measure of damages in cases of fraud, see *Fixen* v. *Blake*, 47 Minn. 540; *Stickney* v. *Jordan*, 47 Minn. 262; *Reynolds* v. *Franklin*, 44 Minn. 30; *Redding* v. *Godwin*, 44 Minn. 355; *Larkin* v. *Hecksher*, 51 N. J. Law, 133; *Howard* v. *Daley*, 61 N. Y. 362; *Willoughby* v. *Thomas*, 24 Gratt. 521; *Smith* v. *Bolles*, 132 U. S. 125; *Crater* v. *Binninger*, 33 N. J. Law, 513; *Horne* v. *Walton*, 117 Ill. 130; *Slingerland* v. *Bennett*, 66 N. Y. 611; *Schwabacker* v. *Riddle*, 84 Ill. 517; *Fitzsimmons* v. *Chapman*, 37 Mich. 139.

*White & Egelston*, for respondents.

Where there is fraud or other intentional wrong, remote and uncertain damages, even punitive damages are recoverable. 1 Sutherland, Dam., 160; *Cate* v. *Cate*, 50 N. H. 144; *Sharon* v. *Mosher*, 17

Barb. 518; *Allison* v. *Chandler*, 11 Mich. 542; *Welch* v. *Ware*, 32 Mich. 77; *Larson* v. *Chase*, 47 Minn. 307.

Whether punitive damages could be recovered of Goehrenger and Collins the trial court did not consider. The motion for setting aside the judgment was made for all the defendants together, and was denied. From that order this appeal is taken. *Gardner* v. *Minea*, 47 Minn. 295; *Miller* v. *Adamson*, 45 Minn. 99.

MITCHELL, J. These were actions on a bond executed by defendant Johnson as principal and the other defendants as sureties, pursuant to the provisions of Laws 1885, ch. 205, entitled "An act to regulate employment bureaus or offices." The bond was conditioned for the payment of any damage which any person secured or engaged to labor for others by the principal obligor, Johnson, might sustain by reason of any unauthorized act, fraud, or misrepresentation for such hiring on his part.

The allegations of the complaints are: That, at Minneapolis, Johnson falsely and fraudulently represented to the plaintiffs that he was authorized by one Dalrymple to procure laborers for him for threshing grain on his farm at Halstad, Minn., distant 270 miles from Minneapolis, and hired and employed them to work for Dalrymple for five consecutive weeks at $1.75 per day, with board and lodging, in consideration of the payment to him (Johnson) by each of the plaintiffs of $6; they to start the same night from Minneapolis to Halstad. That, relying on these representations, each of the plaintiffs accepted the offer, paid the six dollars and started for Halstad. That all of these representations were false, as Johnson well knew. That he was not authorized to employ men for Dalrymple. That, as a consequence, when they arrived at Halstad, and tendered their services to Dalrymple, he declined to give them work, and ordered them off his farm. Then follow allegations as to damages. Upon the trial of the North case the court permitted the plaintiffs, over defendants' objection and exception, to prove that they had no money to buy food or pay their fare back to Minneapolis; that consequently they had to walk back part of the way, and beg for food, and gather wild fruit and green corn to eat, and to sleep in haystacks, thereby causing them suffering and discomfort. We are of opinion that these damages were remote, and not proximate, and therefore the

evidence was improperly admitted. In strict logic and morally it may be said that he who commits a wrongful act should be answerable for all the losses which flow from that act, however remote. But, as has been said, it were infinite for the law to attempt to do this, and any such rule would set society on edge, and fill the courts with endless litigation. Hence the law has been compelled to adopt the practical rule of looking only to the proximate cause, and to the natural and proximate or immediate and direct result; and whatever differences there may be, in other respects, between the measure of damages in actions for breach of contract and in actions of tort, the rule is the same in both,—that only such damages are recoverable as are the natural and proximate consequence of the breach or wrongful act, and not those that are remote. Remotely the wrongful act of Johnson was the cause of plaintiffs' privation and discomfort, but the immediate cause was the special condition and circumstances of the plaintiffs themselves. Had they been able to find other work at or near Halstead, or had they possessed money sufficient to pay their fare back to Minneapolis, this privation and discomfort would not have been endured. Each of these plaintiffs had precisely the same cause of action. But suppose some of them had possessed money enough to buy food and pay their fare back to Minneapolis, and others had not, the result, according to the rule of damages adopted by the court, would be that for precisely the same cause of action the different plaintiffs would have been entitled to recover different amounts. Had Johnson sent these men out into an uninhabited wilderness, where it would have been impossible for them to get food or shelter, such privations as are here complained of would have been the natural and proximate consequence of his wrongful act; or had he known that they had no money (of which there is no evidence), and that they would be unable to find other work, there would have been some reason for contending that these privations were the natural and proximate result of his act; but neither of these is the case here presented. Assuming that Johnson's act was fraudulent, there is much to commend to general favor the right of plaintiffs to recover these remote consequential damages, but we are satisfied it cannot be done without violating well-established rules of law, and opening the door to claims for all sorts of remote damages.

The court also instructed the jury that, if they found that Johnson's conduct was fraudulent and deceitful, they might, in addition to compensatory damages, allow exemplary or punitive damages. This was error. While a tortious act was pleaded as the breach of the bond, yet this was not an action of tort, but an action on the obligation of the bond; and in such an action nothing but compensatory damages can be recovered. We think this is so even as to the principal. *McClendon* v. *Wells*, 20 S. C. 514; *Spaids* v. *Barrett*, 58 Ill. 289; *Dalby* v. *Campbell*, 26 Ill. App. 502. But it is certainly so as to the sureties. They are undoubtedly liable for all actual damages sustained by reason of the unlawful acts of their principal, but that is all the liability they assumed. Exemplary damages are not compensatory, but punitive, in their nature. The sureties were not parties to the alleged fraud of Johnson, and, while they are bound to make full compensation to the injured parties, they never contracted to submit to punishment for his act. *Cobb* v. *People*, 84 Ill. 511. We are aware of one or two decisions to the contrary, but their doctrine does not commend itself to our judgment.

In the Skoglund case, on the first day of the trial the court admitted the same class of evidence as that considered above in the North case. On the second day of the trial the court, on the objection of defendants, refused the offer of plaintiff to prove "that when he was refused work by Dalrymple he had no money, a fact which must have come within the knowledge and must have been in the contemplation of the defendant at the time the employment was made; that he was unable to get food or transportation home without money, and in consequence was obliged to walk, beg, and suffer." The objection to this offer was sustained on the ground that it was too remote, which must mean that the damages offered to be proved were too remote. But when the court charged the jury he instructed them that the fact that plaintiff was obliged to walk back and suffer personal hardship, etc., was too remote, and could not be considered as an element of damages, "unless they found that at the time of the employment this was in the contemplation of the parties themselves." We do not understand how the court came to give this instruction after he had ruled on the trial that all such damages were too remote, in reliance on which presumably the defendants offered nothing in rebuttal of the evidence previously admitted on that point.

The court erred both in giving the instruction and in admitting on the first day the evidence referred to.

In each case the order denying a new trial, and also the judgment in the case of North v. Johnson et al., is reversed.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 1012.)