[No. S018678. Dec. 9, 1991.]

JAMES MITCHELL et al., Plaintiffs and Appellants, v.
JOSE L. GONZALES et al., Defendants and Respondents.

COUNSEL

Edward J. Horowitz, Greenberg & Panish and David Greenberg for Plaintiffs and Appellants.

Bodkin, McCarthy, Sargent & Smith and Richard P. Kinnan for Defendants and Respondents.

Rogers, Joseph, O'Donnell & Quinn, Joseph W. Rogers, Susan M. Popik, Richard D. Shively, Thelen, Marrin, Johnson & Bridges, Lee A. McCoy and Curtis A. Cole as Amici Curiae on behalf of Defendants and Respondents.

OPINION

LUCAS, C. J.—In this case we decide whether BAJI No. 3.75,[1] the so-called proximate cause instruction, which contains a "but for" test of cause in fact, should continue to be given in this state, or whether it should be disapproved in favor of BAJI No. 3.76, the so-called legal cause instruction, which employs the "substantial factor" test of cause in fact.[2]

Plaintiffs James and Joyce Mitchell, the parents of 12-year-old Damechie Mitchell, who drowned in Lake Gregory on July 4, 1985, sued defendants Jose L. Gonzales, Matilde Gonzales, and Mrs. Gonzales's son Luis (hereafter defendants) for damages, claiming defendants' negligence caused Damechie's death. By special verdict, the jury found that defendants were negligent, i.e., they had breached a duty, but that the negligence was not a proximate cause of the death.

The Court of Appeal concluded that, under the facts, the trial court erred when it denied plaintiffs' request to instruct the jury pursuant to BAJI No.

---

[1] All BAJI instructions referred to are from the bound volume of the seventh edition (1986) unless otherwise noted.

[2] BAJI No. 3.75, requested by defendants and given by the trial court, provides: "A proximate cause of [injury] [damage] [loss] [or] [harm] is a cause which, in natural and continuous sequence, produces the [injury] [damage] [loss] [or] [harm] and without which the [injury] [damage] [loss] [or] [harm] would not have occurred." Because of the "without which" language, courts often refer to this instruction as the "but for" instruction of causation.

BAJI No. 3.76, requested by plaintiffs and refused by the trial court, provides: "A legal cause of [injury] [damage] [loss] [or] [harm] is a cause which is a substantial factor in bringing about the [injury] [damage] [loss] [or] [harm]."

We emphasize that despite the use of the terms proximate cause and legal cause, BAJI Nos. 3.75 and 3.76 are instructions on *cause in fact*. Issues that are properly referred to as questions of proximate or legal cause are contained in other instructions. (See, e.g., BAJI No. 3.79 [superseding causes].)

3.76 and instead instructed under BAJI No. 3.75. After reviewing both instructions, the Court of Appeal concluded that BAJI No. 3.75 is potentially misleading and should not have been given, and that the trial court committed prejudicial error when it refused to give BAJI No. 3.76.

We granted review in this case to determine whether courts should continue to instruct juries on cause in fact using BAJI No. 3.75 in light of the frequent criticism of that instruction. We conclude that the Court of Appeal was correct and that BAJI No. 3.75 should be disapproved.

## I.  FACTS

Damechie, 12 years old, standing 4 feet 11 inches tall, and weighing 90 pounds, had a tag-along little-brother relationship with his friend Luis, who was 14 years old, 5 feet 4 inches tall, and weighed 190 pounds. The Gonzales invited Damechie to accompany them to Lake Gregory for the Fourth of July. According to Mrs. Mitchell's testimony, when Mrs. Gonzales called her to ask whether Damechie could accompany them, she informed Mrs. Gonzales that Damechie could not swim. After Mrs. Gonzales suggested that the boys would play in the shallow edge of the lake, the Mitchells agreed that Damechie could go, as long as he was restricted to the edge of the lake.

Mrs. Gonzales denied that she had told Mrs. Mitchell the children would be swimming or that Mrs. Mitchell had told her Damechie could not swim.

According to Mrs. Mitchell, while Damechie was packing, he, Luis, and Luis's sister, Yoshi, talked about swimming. Mrs. Mitchell told the children Damechie could not swim and should not go swimming. Luis and Yoshi said they would watch Damechie.

Luis testified that Mrs. Mitchell did not tell him that Damechie could not swim. He did remember telling her they were going swimming, but he did not remember what she said about it. He also remembered that Mrs. Mitchell told him to watch out for Damechie because Luis was bigger and older than Damechie.

At the lake, the Gonzales family was joined by Mr. and Mrs. Reyes and their young children. Luis asked his parents for money to rent a paddleboard. Mrs. Gonzales told him, as she always did, not to go into water over his head. Both Luis and Yoshi knew how to swim.

The three children rented two paddleboards, replying affirmatively when asked by the employee in charge of rentals whether they knew how to swim.

During the morning, the children stayed within 30 feet of shore, in water that was not over their heads. Mr. and Mrs. Gonzales admittedly did not watch the children during some of the time the children were in the water.

Mrs. Gonzales testified that had she known the children were going into deep water, she probably would not have allowed it because she believed it would be dangerous. Apparently, because of her vantage point, it was difficult for her to watch the children in the water, and there was a long period when she did not have them in sight. She assumed Luis would obey her, although she acknowledged that he had disobeyed her on other occasions.

Mr. Gonzales testified that he relied on the lifeguards to watch the children and that he neither knew nor asked whether Damechie could swim.

After lunch, Mrs. Gonzales told the children not to leave the picnic area and went to the restroom. Nevertheless, the children left and rented another paddleboard. When she returned to the picnic site 15 minutes later, the children were gone and Mr. Gonzales was asleep. She did not know where they had gone, nor did she ask Mr. Reyes, who was awake and at the site, of their whereabouts.

The children had entered the water and, on their paddleboard, crossed the lake. When Luis started to push Damechie and Yoshi, who were on the paddleboard, back across the lake, Damechie told Luis he could not swim.

Luis, nevertheless, pushed them 100 feet out onto the lake, into water over their heads. He then told Damechie to let him get on the paddleboard because he was tired. Damechie again told Luis he was unable to swim and asked him to be careful. Luis promised to be careful. After Luis got on board, Damechie asked Luis whether Luis would save him if he fell off. Luis said he would do so.

Shortly before the accident, the children were five to ten feet from three women, apparently on a nearby paddleboard, who testified that the children made a lot of noise and engaged in horseplay. They each testified that Luis was the rowdiest.

One of the women testified that the paddleboard tipped over and that the noise and roughhousing stopped for five to ten minutes. Immediately before the board tipped over, Luis was on the center of the board and Damechie and Yoshi were draped over it. During the quiet period, neither Luis nor Yoshi called or gestured for help, but they appeared to be whispering.

The second woman testified that the quiet period lasted from one to five minutes, during which time she glanced over and saw only Luis and Yoshi. She did not hear any cries for help.

The third woman thought three minutes of quiet elapsed before she noticed only two children where there had previously been three. She never heard any call for help.

After the women noticed one of the children was missing, Luis said, "Lady, my friend's down there," indicating the lake. One of the women yelled for a lifeguard and asked Luis why he had not signalled for help sooner. He replied that neither he nor his sister could swim. He also said that Damechie had grabbed Luis in an effort to save himself and that he, Luis, had kicked Damechie to get him off and to avoid being pulled under.

Luis testified that the board tipped over when Damechie put his hands on Luis's shoulder. He admitted he rocked the board before it tipped over and that Damechie's movement had not caused the board to tip. The employee in charge of the paddleboard rentals testified that "You have to work at it" to get a board to tip. Yoshi testified that the board tipped when Luis attempted to climb on.

Luis testified that Damechie was very scared while the board was rocking and that he asked Luis not to rock the board because he did not want to fall off. Additionally, Luis admitted that at the time, he was being very rowdy and that when he tipped the board, he and Damechie fell off. Damechie panicked and grabbed Luis's shorts, pulling them down. Luis pulled them up, and Damechie grabbed Luis's ankles. Luis shook free of Damechie, got to the surface, and climbed onto the board. He looked into the water and could see Damechie's fingers, which he tried to grab. Yoshi remained on the board. Luis testified inconsistently, one time stating that he waited two or three minutes before calling a lifeguard and another time stating that he immediately called for a lifeguard.

Later that day, Luis told the lifeguards that Damechie had rocked the board, causing it to flip. He asked them whether he and his family would be sued. Mrs. Gonzales asked him, "Why didn't you stay where I told you to stay?"

Damechie's body was not recovered for several days because of the opacity of the water and bottom vegetation. The body was about 120 feet from shore in 8 feet of water.

The Mitchells sued the Gonzaleses, including Luis, and others not party to this appeal. The complaint alleged causes of action for negligence and

wrongful death. Defendants asserted comparative negligence on the part of Damechie and his parents.

As noted above, the court refused plaintiffs' proffered instruction on causation in fact (i.e., BAJI No. 3.76) and instead gave the causation in fact instruction requested by defendants, BAJI No. 3.75.

The jury, by special verdict, concluded that defendants were negligent but that the negligence was not a cause of the death. The jury therefore did not reach a special verdict on comparative negligence.

The trial court denied plaintiffs' motions for a new trial or a judgment notwithstanding the verdict. The Court of Appeal reversed.

## II. DISCUSSION

As explained below, we conclude the Court of Appeal correctly determined that the trial court prejudicially erred when it refused BAJI No. 3.76 and instead gave BAJI No. 3.75. Our discussion proceeds in two steps. ▪ We begin by determining whether instructional error occurred. Our analysis focuses on whether conceptual and grammatical flaws in BAJI No. 3.75 may confuse jurors and lead them to improperly limit their findings on causation, and whether BAJI No. 3.76 is a superior alternative instruction. ▪ Because we find error, we next analyze prejudice and conclude that there is a reasonable probability that BAJI No. 3.75 misled the jurors into finding that defendants' negligence was not a "proximate cause" of Damechie's death and that a result more favorable to plaintiffs would have occurred if the jury had been instructed under BAJI No. 3.76. Accordingly, we affirm the Court of Appeal's decision reversing the judgment of the trial court.

### A. *Alleged Instructional Error*

As Dean Prosser observed over 40 years ago, "Proximate cause remains a tangle and a jungle, a palace of mirrors and a maze . . . ." Cases "indicate that 'proximate cause' covers a multitude of sins, that it is a complex term of highly uncertain meaning under which other rules, doctrines and reasons lie buried . . . ." (Prosser, *Proximate Cause in California* (1950) 38 Cal.L.Rev. 369, 375.)

■ One of the concepts included in the term proximate cause is cause in fact, also referred to as actual cause.[3] Indeed, for purposes of BAJI No. 3.75, "so far as a jury is concerned 'proximate cause' *only* relates to causation in fact." (Com. to BAJI No. 3.75, italics added.)[4] "There are two widely recognized tests for establishing cause in fact. The 'but for' or 'sine qua non' rule, unfortunately labeled 'proximate cause' in BAJI No. 3.75, asks whether the injury would not have occurred but for the defendant's conduct. The other test, labeled 'legal cause' in BAJI No. 3.76, asks whether the defendant's conduct was a substantial factor in bringing about the injury." (*Maupin* v. *Widling* (1987) 192 Cal.App.3d 568, 574 [237 Cal.Rptr. 521].)

BAJI Nos. 3.75 and 3.76 are *alternative* instructions that should not jointly be given in a single lawsuit. (See *Maupin* v. *Widling, supra,* 192 Cal.App.3d 568, 575-579 [error to give both BAJI No. 3.79, which instructs on supervening causes in substantial factor terms, and BAJI No. 3.75].) Several Court of Appeal opinions have discussed the propriety of giving one or the other instruction in particular circumstances. It has generally been recognized that the "but for" test contained in BAJI No. 3.75 should not be used when two "causes concur to bring about an event and either one of them operating alone could have been sufficient to cause the result (*Thomsen* v. *Rexall Drug & Chemical Co.* [(1965)] 235 Cal.App.2d 775 [45 Cal.Rptr. 642]). In those few situations, where there are concurrent [independent] causes, our law provides one cannot escape responsibility for his negligence on the ground that identical harm would have occurred without it. The proper rule for such situations is that the defendant's conduct is a cause of the event because it is a material element and a substantial factor in bringing it about." (*Vecchione* v. *Carlin* (1980) 111 Cal.App.3d 351, 359 [168 Cal.Rptr. 571]; see also *Hart* v. *Browne* (1980) 103 Cal.App.3d 947, 960-962 [163 Cal.Rptr. 356]; *Fraijo* v. *Hartland Hospital* (1979) 99 Cal.App.3d 331, 346-347 [160 Cal.Rptr. 246]; Prosser & Keeton on Torts (5th ed. 1984) § 41, pp. 266-267; BAJI Nos. 3.75, 3.76 and respective comments.) The foregoing authorities conclude that in such a situation BAJI No. 3.76 should be given.

■ This case presents the issue of whether BAJI No. 3.75 should be given in *any* negligence action.

---

[3]In addition to the issue of causation in fact, Prosser lists the following issues that have at various times been included in the proximate cause rubric: apportionment of damages among causes, liability for unforeseeable consequences, superseding causes, shifted responsibility, duty to the plaintiff, and plaintiff's fault. (Prosser, *Proximate Cause in California, supra,* 38 Cal.L.Rev. 369, 374.)

[4]Although the dissent embarks upon a general discussion of proximate cause, the discussion is misplaced. We do not dispute the dissent's claim that there is more than one concept included in the term "proximate cause." (Dis. opn., *post,* at p. 1056.) For purposes of this case, however, we focus on the jury's consideration of BAJI No. 3.75 as it relates to cause in fact.

Criticism of the term "proximate cause" has been extensive. Justice Traynor once observed, "In all probability the general expectation is the reasonable one that in time courts will dispel the mists that have settled on the doctrine of proximate cause in the field of negligence." (*Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 222 [157 P.2d 372, 158 A.L.R. 872] (conc. opn. of Traynor, J.).) Similarly, while serving on the Court of Appeal, Justice Tobriner commented, "The concept of proximate causation has given courts and commentators consummate difficulty and has in truth defied precise definition." (*State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1959) 176 Cal.App.2d 10, 20.)

Nor did Prosser and Keeton hide their dislike for the term: "The word 'proximate' is a legacy of Lord Chancellor Bacon, who in his time committed other sins. The word means nothing more than near or immediate; and when it was first taken up by the courts it had connotations of proximity in time and space which have long since disappeared. It is an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness." (Prosser & Keeton on Torts, *supra*, § 42, at p. 273, fn. omitted.)

It is reasonably likely that when jurors hear the term "proximate cause" they may misunderstand its meaning or improperly limit their discussion of what constitutes a cause in fact. Prosser and Keeton's concern that the word "proximate" improperly imputes a spatial or temporal connotation is well founded. Webster's Third New International Dictionary (1981) page 1828, defines proximate as "very near," "next," "immediately preceding or following." Yet, "[p]roximity in point of time or space is no part of the definition [of proximate cause] . . . except as it may afford evidence for or against proximity of causation. [Citation.]" (*Osborn* v. *City of Whittier* (1951) 103 Cal.App.2d 609, 616 [230 P.2d 132].)

Given the foregoing criticism, it is not surprising that a jury instruction incorporating the term "proximate cause" would come under attack from courts, litigants, and commentators. In considering a predecessor to BAJI No. 3.75 that included language almost identical to the current instruction,[5] Prosser observed, "There are probably few judges who would undertake to say just what this means, and fewer still who would expect it to mean anything whatever to a jury. The first sentence was lifted by a California

---

[5]"*The proximate cause of an injury is that cause which, in natural and continuous sequence,* unbroken by any efficient intervening cause, *produces the injury, and without which the result would not have occurred.* It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies." (BAJI No. 104 (4th ed. 1943 bound vol.), italics added.)

opinion long since from *Shearman and Redfield on Negligence,* a text written for lawyers and not expected to be comprehensible to laymen, and none too good a text at that." (Prosser, *Proximate Cause in California, supra,* 38 Cal.L.Rev. 369, 424, fn. omitted.)

The misunderstanding engendered by the term "proximate cause" has been documented.[6] In a scholarly study of 14 jury instructions, BAJI No. 3.75 produced proportionally the most misunderstanding among laypersons. (Charrow, *Making Legal Language Understandable: A Psycholinguistic Study of Jury Instructions* (1979) 79 Colum.L.Rev. 1306, 1353 (hereafter *Psycholinguistic Study*).) The study noted two significant problems with BAJI No. 3.75. First, because the phrase "natural and continuous sequence" precedes "the verb it is intended to modify, the construction leaves the listener with the impression that the cause itself is in a natural and continuous sequence. Inasmuch as a single 'cause' cannot be in a continuous sequence, the listener is befuddled." (*Psycholinguistic Study, supra,* 79 Colum.L.Rev. at p. 1323.) Second, in one experiment, "the term 'proximate cause' was misunderstood by 23% of the subjects . . . . They interpreted it as 'approximate cause,' 'estimated cause,' or some fabrication." (*Id.,* at p. 1353.)

Our Courts of Appeal have recognized the serious problems with the language of BAJI No. 3.75. In *Fraijo* v. *Hartland Hospital, supra,* 99 Cal.App.3d 331, the court criticized the instruction because it appeared to place an undue emphasis on "nearness." Nonetheless, "despite the criticism of the 'but for' language in BAJI No. 3.75, the most recent edition of California Jury Instructions (Civil) [citation] . . . allow[s] the trial judge to exercise a discretion in selecting his preference between . . . the 'proximate cause' instruction found in BAJI No. 3.75, or the 'legal cause' instruction found in BAJI No. 3.76." (*Id.,* at p. 346.)

The *Fraijo* court said, "We agree that BAJI No. 3.75—the proximate cause instruction—is far from constituting a model of clarity in informing a jury as to what is meant by proximate causation. . . . Nevertheless, in view of its long history of being considered a correct statement of the law by the courts of this state, we are not inclined to hold that BAJI No. 3.75 is an erroneous instruction. Although we believe such a determination should be made, we

---

[6]Contrary to the dissenting opinion, we think it unwise to underestimate the problems associated with the term "proximate cause." (Dis. opn., *post,* at p. 1060.) The preceding examples clearly establish the likelihood that jurors will be misled by the term. It is in the face of a flurry of criticism that the dissent recognizes the instruction is not a "model of clarity." (Dis. opn., *post,* at p. 1057.) Yet, the dissent advocates retention of the flawed instruction without explaining what mysterious meritorious aspect of the instruction overcomes its readily apparent shortcomings. The dissent fails to articulate any compelling reason for this court to embrace an admittedly confusing instruction.

consider that the determination ought to be made by our Supreme Court and not by an intermediate reviewing court." (*Fraijo* v. *Hartland Hospital, supra,* 99 Cal.App.3d 331, 347; see also *Maupin* v. *Widling, supra,* 192 Cal.App.3d 568, 574 ["BAJI No. 3.75 is famous for causing juror confusion. It has been criticized for its inexact terminology and incorrect sentence structure."]; *John B. Gunn Law Corp.* v. *Maynard* (1987) 189 Cal.App.3d 1565, 1571 [235 Cal.Rptr. 180] [instruction misleading, but "it has never been held error in California to instruct in terms of BAJI No. 3.75 due to lack of intelligibility."].)

We believe the foregoing authorities properly criticize BAJI No. 3.75 for being conceptually and grammatically deficient. The deficiencies may mislead jurors, causing them, if they can glean the instruction's meaning despite the grammatical flaws, to focus improperly on the cause that is spatially or temporally closest to the harm.

■ In contrast, the "substantial factor" test, incorporated in BAJI No. 3.76 and developed by the Restatement Second of Torts, section 431 (com. to BAJI No. 3.76) has been comparatively free of criticism and has even received praise. "As an instruction submitting the question of causation in fact to the jury in intelligible form, it appears impossible to improve on the Restatement's 'substantial factor [test.]' " (Prosser, *Proximate Cause in California, supra,* 38 Cal.L.Rev. 369, 421.) It is "sufficiently intelligible to any layman to furnish an adequate guide to the jury, and it is neither possible nor desirable to reduce it to lower terms." (*Id.,* at p. 379.)[7]

Moreover, the "substantial factor" test subsumes the "but for" test. "If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries." (*Doupnik* v. *General Motors Corp.* (1990) 225 Cal.App.3d 849, 861 [275 Cal.Rptr. 715].)

Not only does the substantial factor instruction assist in the resolution of the problem of independent causes, as noted above, but "[i]t aids in the disposition . . . of two other types of situations which have proved troublesome. One is that where a similar, but not identical result would have

---

[7]Although the dissent recognizes that BAJI No. 3.76 (embodying the "substantial factor" test) is "essentially a cause-in-fact instruction," it criticizes the test on grounds unrelated to its use with regard to cause-in-fact considerations. The dissent prefaces its discussion with the qualification, "When the 'substantial factor' test of BAJI No. 3.76 is used as a means of setting limits on liability . . . ." (Dis. opn., *post,* at p. 1060.) Without articulating any reason to believe the test would be so applied, the dissent claims the test does not work well for the liability limiting considerations that are distinct from a finding of cause in fact. Although the dissent further details the shortcomings of the "substantial factor" test when the test is used for other purposes, it does not demonstrate any deficiencies of the "substantial factor" test when used for cause-in-fact determinations.

followed without the defendant's act; the other where one defendant has made a clearly proved but quite insignificant contribution to the result, as where he throws a lighted match into a forest fire. But in the great majority of cases, *it produces the same legal conclusion as the but-for test.* Except in the classes of cases indicated, no case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it; nor will cases very often arise where it would not be such a factor when it was so indispensable a cause that without it the result would not have followed." (Prosser & Keeton on Torts, *supra*, § 41, at pp. 267-268, fns. omitted, italics added.) Thus, "[t]he substantial factor language in BAJI No. 3.76 makes it the preferable instruction over BAJI No. 3.75. [Citation.]" (Maupin v. *Widling, supra*, 192 Cal.App.3d 568, 575.)

We recognize that BAJI No. 3.76 is not perfectly phrased. The term "legal cause" may be confusing. As part of the psycholinguistic study referred to above, the experimenters rewrote BAJI No. 3.75 to include the term "legal cause."[8] The study found that "25% of the subjects who heard 'legal cause' misinterpreted it as the opposite of an 'illegal cause.' We would therefore recommend that the term 'legal cause' not be used in jury instructions; instead, the simple term 'cause' should be used, with the explanation that the law defines 'cause' in its own particular way."[9] (*Psycholinguistic Study, supra*, 79 Colum.L.Rev. at p. 1353.)

Moreover, "advocates, judges, and scholars [have] capitalized upon the ambiguities and nuances of 'substantial' " and have created new uses for the instruction. (Prosser & Keeton on Torts (5th ed., 1988 supp.) § 41, p. 45.) One such use is "in cases in which a defendant's conduct is clearly a 'but for' cause of plaintiff's harm, and defense counsel contends that defendant's conduct made such an insubstantial contribution to the outcome that liability should not be imposed. [¶] . . . Used in this way, the 'substantial factor' test becomes an additional barrier to liability . . . ." (*Id.*, at pp. 43-44.) Such a use of the "substantial factor" test undermines the principles of comparative negligence, under which a party is responsible for his or her share of negligence and the harm caused thereby. We are confident, however,

---

[8]The modified instruction read, "A legal cause of an injury is something that triggers a natural chain of events that ultimately produces the injury. [¶] Without the legal cause, the injury would not occur." (*Psycholinguistic Study, supra*, 79 Colum.L.Rev. at p. 1352.)

[9]Although we need not decide whether BAJI No. 3.76 should be rewritten to eliminate the term "legal cause," we do suggest that the Committee on Standard Jury Instructions consider whether the instruction could be improved by adopting the suggestion of the *Psycholinguistic Study* or by otherwise modifying the instruction.

that proper argument by counsel and instruction by the court will prevent any confusion from occurring.[10]

■ The continued use of BAJI No. 3.75 as an instruction on cause in fact is unwise. The foregoing amply demonstrates that BAJI No. 3.75 is grammatically confusing and conceptually misleading. Continued use of this instruction will likely cause needless appellate litigation regarding the propriety of the instructions in particular cases. Use of BAJI No. 3.76 will avoid much of the confusion inherent in BAJI No. 3.75. It is intelligible and easily applied. We therefore conclude that BAJI No. 3.75, the so-called proximate cause instruction, should be disapproved and that the court erred when it refused to give BAJI No. 3.76 and instead gave BAJI No. 3.75. (See *ante*, p. 1052, fn. 7.)

### B.  *Prejudicial Effect of Erroneous Instruction*

■ Having determined it was error to refuse to give BAJI No. 3.76 and instead give BAJI No. 3.75, we must decide whether the error was so prejudicial as to require reversal.

■ Under article VI, section 13 of the California Constitution, if there is error in instructing the jury, the judgment shall be reversed only when the reviewing court, "after an examination of the entire cause, including the evidence," concludes that the error "has resulted in a miscarriage of justice." Under the Constitution, we must determine whether it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Although there is no precise formula for determining the prejudicial effect of instructional error, we are guided by the five factors enumerated in *LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946].

■ The first factor we consider is the degree of conflict in the evidence on the critical issue, here cause in fact. The evidence shows that Damechie drowned, not only because he could not swim, but also because he was placed in a position in which his inability to swim resulted in death. The jury's verdict, amply supported by the evidence, indicates that Mr. and Mrs. Gonzales and their son Luis were at least partially responsible for Damechie's predicament. Mr. and Mrs. Gonzales failed to supervise him adequately. Luis, after assuring Damechie he would be careful and knowing that Damechie could not swim, climbed onto the paddleboard, rocked it, causing it to flip over, and failed to call for help despite the presence of adults who might have been able to save Damechie. The conflict in the evidence is not

---

[10]Although we disapprove BAJI No. 3.75, nothing in this opinion should be read to discourage the Committee on Standard Jury Instructions from drafting a new and proper "but for" instruction.

great. If properly instructed, it is reasonably probable that the jury would have found defendants' behavior to have been a substantial factor, and thus a cause in fact, in Damechie's death.

Second, we consider whether the jury asked for a rereading of the erroneous instruction or of related evidence. The jury did not make such a request, but we note that jury received a copy of the instructions, making such a request unnecessary.

Third, we analyze the closeness of the jury's verdict. The jury found on a vote of nine to three that Jose Gonzales and Luis were negligent (i.e., they breached a duty of care to Damechie). Likewise, the jury concluded on a vote of 11 to 1 that Matilde Gonzales was negligent. Yet the jury unanimously concluded that neither the actions of Luis nor Jose Gonzales caused Damechie's death and, on a vote of 10 to 2, the jury found that the actions of Matilde Gonzales were not a cause of the death.

The verdict as to causation was not particularly close. It seems that the jury did follow BAJI No. 3.75 but was misled by the instruction's flaws: Having found the defendants negligent, it is illogical and inconsistent on this record to conclude that they were not a cause in fact of Damechie's death. Accordingly, we conclude it is reasonably probable that the jury was confused by BAJI No. 3.75 and overemphasized the "but for" nature of the instruction, improperly focusing on the factor operative at the closest temporal proximity to the time of death, Damechie's inability to swim.

Fourth, we consider whether defense counsel's closing argument contributed to the instruction's misleading effect. The closing argument was replete with references to Damechie's inability to swim, his own knowledge that he could not swim, and his decision nevertheless to venture out on the lake. Counsel also argued that Damechie's parents knew he could not swim, yet they permitted him to go with the Gonzaleses without determining whether the Gonzaleses intended to take the children swimming, and argued that but for these facts, Damechie would not have drowned.

The argument thus highlighted the condition temporally closest to the death, Damechie's inability to swim, and factors related to it. As discussed above, BAJI No. 3.75 improperly emphasizes temporal and spatial proximity. The argument thus contributed to the instruction's misleading effect. It is reasonably probable that if the jury had received the substantial factor instruction, counsel's argument would not have misled the jury.

Finally we consider the effect of other instructions in remedying the error. BAJI No. 3.77 was requested by both parties and given by the court.[11] This instruction did not remedy the confusion caused by instructing the jury under BAJI No. 3.75. By frequently repeating the term "proximate cause" and by emphasizing that a cause must be operating at the moment of injury, the instruction buttressed rather counteracted the restrictions on time and place inherent in the word "proximate." Thus, giving BAJI No. 3.77 did not cure the deficiencies of BAJI No. 3.75. (*Hart* v. *Browne, supra,* 103 Cal.App.3d 947, 961.)

Based on the foregoing analysis, we conclude that it is reasonably probable a result more favorable to the plaintiffs would have resulted if BAJI No. 3.75 had not been given.

## Conclusion

We conclude that BAJI No. 3.75 should be disapproved, that the trial court erred when it gave the instruction, and that such error was prejudicial. Accordingly, the decision of the Court of Appeal reversing the judgment in favor of defendants is affirmed.

Mosk, J., Panelli, J., Arabian, J., Baxter, J., and George, J., concurred.

**KENNARD, J.**—I dissent.

The majority invalidates a jury instruction on proximate cause—an essential element of every tort case—that has been used in this state for some 50 years and embodies well-established law. And, by delegating responsibility for defining proximate cause to the Committee on Standard Jury Instructions, the majority neglects its duty to provide guidance to trial courts and litigants. This court should give guidance to the committee, not seek guidance from it.

The majority proscribes use of BAJI No. 3.75, a standard jury instruction that defines proximate cause as "a cause which, in natural and continuous sequence, produces the injury and without which the injury would not have occurred." As I shall explain, proximate cause includes two elements: an element of physical or logical causation, known as cause in fact, and a more normative or evaluative element, which the term "proximate" imperfectly conveys. The majority concedes that the concept of proximate cause includes

---

[11]BAJI No. 3.77 provides: "There may be more than one [proximate] [legal] cause of an injury. When negligent conduct of two or more persons contributes concurrently as [proximate] [legal] causes of an injury, the conduct of each of said persons is a [proximate] [legal] cause of the injury regardless of the extent to which each contributes to the injury. A cause is concurrent if it was operative at the moment of injury and acted with another cause to produce the injury. [It is no defense that the negligent conduct of a person not joined as a party was also a [proximate] [legal] cause of the injury.]" As read, the instruction included the term "proximate" and the last sentence.

these two distinct elements, yet it limits its discussion of BAJI No. 3.75 to that instruction "as it relates to cause in fact." (Maj. opn., *ante*, at p. 1049, fn. 4.) Having found BAJI No. 3.75 fatally deficient, the majority suggests that another instruction, BAJI No. 3.76, provides a satisfactory alternative instruction on cause in fact. Yet the majority does not embrace this other instruction as an adequate expression of the second, more elusive element of proximate cause. Because BAJI No. 3.75 addresses both elements of proximate cause, the majority's decision leaves a significant unanswered question: Is there now a standard jury instruction that trial courts can use to convey the second element?

Legal scholars have long struggled with the complexities and subtleties of proximate cause. (See e.g., Smith, *Legal Cause in Actions of Tort* (1911) 25 Harv.L.Rev. 103; Prosser, *Proximate Cause in California* (1950) 38 Cal.L.Rev. 369.) But the problem of proximate cause—when and how to limit liability when cause and effect relationships logically continue to infinity—has remained intractable and the riddle of proximate cause has remained unsolved. (Prosser & Keeton on Torts (5th ed. 1984) § 43, p. 300.) Although BAJI No. 3.75 is not a model of clarity, and a better instruction would certainly be most welcome, this court should not proscribe the use of BAJI No. 3.75 unless and until it proposes a better instruction that includes both elements of proximate cause, or at least provides meaningful guidance on the subject. Because the majority has done neither, I would not hold in this case that the trial court erred in instructing the jury with BAJI No. 3.75.

I

To understand the issue presented in this case, it is necessary to examine the concept of proximate cause and the manner in which BAJI No. 3.75 explains it to the jury.

An essential element of any cause of action for negligence is that the defendant's act or omission was a cause of the plaintiff's injury. (E.g., Prosser & Keeton on Torts, *supra*, § 41, at p. 263; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 965, p. 354.) To simply say, however, that the defendant's act or omission must be a necessary antecedent of the plaintiff's injury does not resolve the question of whether the defendant should be held liable. As Prosser and Keeton observed: "The consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.'" (Prosser & Keeton on Torts, *supra*, § 41, at p. 264, quoting *North* v. *Johnson* (1894) 58 Minn. 242 [59 N.W. 1012].)

Accordingly, the law must impose limitations on liability other than simple causality. These additional limitations are related not only to the degree of connection between the act or omission and the injury, but also to "our more or less inadequately expressed ideas of what justice demands, or of what is administratively possible and convenient." (Prosser & Keeton on Torts, *supra*, § 41, at p. 264.) Thus, there are two basic elements of proximate cause: cause in fact and the limitations imposed by "our more or less inadequately expressed ideas of what justice demands." For the sake of clarity and convenience, I shall refer to the latter element as the social evaluative process.

BAJI No. 3.75, the instruction invalidated by the majority, addresses both elements of proximate cause. By stating that a proximate cause is one "without which the injury would not have occurred" (or, in other words, that the injury would not have occurred "but for" the defendant's conduct), the instruction addresses the element of cause in fact. The term "natural and continuous sequence" and the word "proximate," on the other hand, address the social evaluative process because they require the jury, after determining cause in fact, to reflect further on causation before finally deciding the issue of liability.

## II

The majority disapproves BAJI No. 3.75 because it contains the word "proximate," which connotes proximity in space or time. (Maj. opn., *ante*, at p. 1050.) The majority exaggerates the difficulties presented by the use of the word "proximate" and adopts a wholly inadequate solution. Although proximity in time or space is not relevant to cause in fact, it is frequently an appropriate consideration in determining the second element of proximate cause, the social evaluative process. In the absence of an instruction that captures that element at least as well, use of BAJI No. 3.75 should not be forbidden.

The majority relies on a statement from Prosser and Keeton objecting to the term "proximate" as "an unfortunate word, which places an entirely wrong *emphasis* upon the factor of physical or mechanical closeness." (Prosser & Keeton on Torts, *supra*, § 42, at p. 273, italics added.) Yet by these words Prosser and Keeton do not assert that proximity in space and time is irrelevant to the ultimate determination of proximate cause, but only that it should not be unduly emphasized. This necessarily implies that temporal and spatial proximity does play some role in the determination of proximate cause.

Other authority supports the conclusion that temporal and spatial proximity is frequently an appropriate consideration in determining the social

evaluative process element of proximate cause. As a Court of Appeal recently remarked, "The time span between any alleged misconduct and the harm is among the factors to be considered in determining the existence of proximate cause." (*Weissich* v. *County of Marin* (1990) 224 Cal.App.3d 1069, 1083 [274 Cal.Rptr. 342]; see also *Duffy* v. *City of Oceanside* (1986) 179 Cal.App.3d 666, 674 [224 Cal.Rptr. 879]; Rest.2d Torts, § 433, com. f.) The same is true of proximity in space. Foreseeability of injury, which is a concept that includes spatial nearness or remoteness, may be relevant to the trier of fact's decision whether defendant's act "was a proximate or legal cause of the plaintiff's injury." (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) Indeed, a case the majority cites recognizes the potential relevance of temporal and spatial proximity. In *Osborn* v. *City of Whittier* (1951) 103 Cal.App.2d 609, 616 [230 P.2d 132], the court said that "[p]roximity in point of time or space . . . is of no importance *except as it may afford evidence for or against proximity of causation.*" (Italics added.)

The majority directs its remaining criticism of BAJI No. 3.75 to the statement in the instruction that "a proximate cause is a cause which, in *natural and continuous sequence,* produces the injury . . . ." (Italics added.) Quoting from a psycholinguistic study, the majority characterizes the instruction as befuddling because the term "natural and continuous sequence" precedes the verb it modifies, thus creating the impression that the cause itself is in a "natural and continuous sequence." (Maj. opn., *ante,* at p. 1051.) But this perceived problem with the placement of the language could be readily corrected by simply rearranging the sentence to read: "a proximate cause of the injury is a cause without which the injury would not have occurred and which produces the injury in natural and continuous sequence."

There is no immediate need to proscribe use of BAJI No. 3.75. Trial courts have been instructing juries in its language since 1969 (BAJI No. 3.75 (6th ed. 1977); BAJI No. 3.75 (5th ed. 1969)), and, as the majority notes (maj. opn., *ante,* at p. 1050, fn. 5), it is almost identical to the standard instruction used since 1943. (BAJI No. 104 (4th ed. 1943).) The courts of this state have long considered it a correct statement of the law. (*Fraijo* v. *Hartland Hospital* (1979) 99 Cal.App.3d 331, 347 [160 Cal.Rptr. 246].) Despite its flaws, BAJI No. 3.75 ought to be retained as an acceptable instruction in the absence of a proposed superior instruction.

The majority asserts that disapproval of BAJI No. 3.75 is justified because "[i]ssues that are properly referred to as questions of proximate or legal cause are contained in other instructions. (See e.g., BAJI No. 3.79 [superseding causes].)" (Maj. opn., *ante,* at p. 1044, fn. 2.) But a review of the

relevant instructions (BAJI Nos. 3.77, 3.78, 3.79, and 3.80) shows that each addresses a specialized situation.[1] None attempts a general definition of the social evaluative process element of proximate cause, and thus none will fill the void resulting from the proscribing of BAJI No. 3.75.

### III

The majority favors the "substantial factor" instruction, BAJI No. 3.76, over the "but for" instruction, BAJI No. 3.75, as a definition of cause in fact. But the majority makes no claim that BAJI No. 3.76 adequately addresses the social evaluative process element, the most critical and elusive aspect of proximate cause.

BAJI No. 3.76 states that "[a] legal cause of injury is a cause which is a substantial factor in bringing about the injury." The word "substantial" refers only to whether the defendant's act was more than a minimal element in the plaintiff's injury. (Prosser & Keeton on Torts, *supra*, § 41, at p. 267; see also Prosser, *Proximate Cause in California, supra*, 38 Cal.L.Rev. 369, 378-382.) Thus, BAJI No. 3.76 is essentially a cause-in-fact instruction. Because it requires only a single determination by the jury (whether the defendant's conduct was a "substantial factor" in producing the plaintiff's injury), BAJI No. 3.76 does not reflect as clearly as does BAJI No. 3.75 the two separate and distinct elements of proximate cause.

When the "substantial factor" test of BAJI No. 3.76 is used as a means of setting limits on liability, it is no better than the "but for" test of BAJI No. 3.75, the instruction invalidated by the majority, and it is just as problematic as the word "proximate" in BAJI No. 3.75. As Prosser and Keeton observed: "A number of courts have [used substantial factor as a test of proximate cause, not just cause in fact], apparently accepting the phrase as the answer to all prayers and some sort of universal solvent. As applied to the fact of causation alone, the test though not ideal, may be thought useful. But when the 'substantial factor' is made to include all the ill-defined considerations of policy which go to limit liability once causation in fact is found, it has no more definite meaning than 'proximate cause,' and it becomes a hindrance rather than a help." (Prosser & Keeton on Torts, *supra*, § 42, at p. 278.)

---

[1]BAJI No. 3.77 states that there may be concurrent causes. BAJI No. 3.78 says that a defendant is not relieved of liability when there are two independent causes. BAJI No. 3.79 explains that a defendant is not relieved of liability by the negligence of a third party if the defendant should have realized that the third party might act as it did, or a reasonable person would not have regarded the third party's acts as highly extraordinary, or the conduct of the third party was not extraordinarily negligent and was a normal consequence of the situation created by the defendant. BAJI No. 3.80 addresses the situation when all of the defendants were negligent but the plaintiff cannot prove causation.

Because its language is neither as clear nor as helpful as it superficially appears, the "substantial factor" (BAJI No. 3.76) instruction is no better than the "but for" instruction (BAJI No. 3.75). As Prosser and Keeton explained: "Even if 'substantial factor' seemed sufficiently intelligible as a guide in time past, however, the development of several quite distinct and conflicting meanings for the term 'substantial factor' has created risk of confusion and misunderstanding, especially when a court, or an ádvocate or scholar, uses the phrase without explicit indication of which of its conflicting meanings is intended." (Prosser & Keeton on Torts, (5th ed., 1988 supp.) § 41, p. 43.) For instance, the term "substantial factor" may impose an additional barrier to liability when used to focus on the respective degrees of the contribution of different causes of any injury. It may also be used to focus the inquiry on an actor's motive or purpose in the sense of attempting to provide a means of distinguishing permissible and impermissible motives. And it may be confused with the separate requirement that the plaintiff prove the elements of the case by a preponderance of the evidence. (*Id.* at pp. 43-45.)

Thus, the majority fails to recognize that BAJI No. 3.76 is no better than BAJI No. 3.75 as a comprehensive proximate cause instruction.

### IV

By delegating to the Committee on Standard Jury Instructions[2] the responsibility for defining proximate cause, the court neglects its duty, as the highest court in this state, to provide guidance to the state's trial courts.

It is easy, as the majority has done, to find fault with existing formulations of proximate cause. It is quite another matter, however, to actually address and resolve the subtle and complex issues presented by the concept of proximate cause. The Committee on Standard Jury Instructions will necessarily be in the same situation as are trial judges: "The trial judge is in the dilemma that a failure to instruct at all on proximate cause is very likely to be error, while any instruction he [or she] gives runs the risk of being so complicated and vulnerable to attack in its ideas or language that it invites

---

[2]The committee's full name is The Committee on Standard Jury Instructions, Civil, of the Superior Court of Los Angeles County, California. Formed in 1938, the committee includes among its members attorneys as well as superior court judges. The committee has performed invaluable service by drafting standard or pattern jury instructions, based primarily on published appellate decisions, for use in civil jury trials. Although no statute mandates the use of the instructions, the Judicial Council has recommended their use, when applicable, "unless [the trial judge] finds that a different instruction would more adequately, accurately or clearly state the law." (Cal. Standards Jud. Admin., § 5.) The Judicial Council has cautioned that trial judges should give jury instructions proposed by the parties' attorneys "no less consideration" than the committee's standard instructions. (*Ibid.*)

appeal." (Prosser, *Proximate Cause in California, supra,* 38 Cal.L.Rev. at pp. 423-424.)

Unless and until this court is prepared to offer a better alternative or provide meaningful guidance on both elements of proximate cause, I would not invalidate BAJI No. 3.75. Accordingly, I would hold that the trial court did not err when it instructed the jury in the terms of BAJI No. 3.75.